CA No. 16-10010

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,   )
                        )   CA No. 16-10010
        Plaintiff-Appellee,  )
                        )   D.C. No. 15-00226 EJD
          v.              )
                        )
DOUGLAS STROMS YORK,    )
                        )
      Defendant-Appellant.  )
_____)

**APPELLANT'S OPENING BRIEF**

STEVEN G. KALAR
Federal Public Defender
GRAHAM ARCHER
Assistant Federal Public Defender
MARA K. GOLDMAN
Research and Writing Attorney
55 South Market Street, Suite 820
San Jose, CA 95113
Telephone:  (408) 291-7753

Counsel for Defendant-Appellant
DOUGLAS STROMS YORK

# **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

APPELLANT'S BAIL STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF ISSUES PRESENTED ON REVIEW . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I.      Section 912 Requires the Government to Prove that the Defendant
        Acted with the Intent to Deceive . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.      While § 912 Does Not Require Proof of Intent to *Defraud*,
                the Statute Does Require Proof of Intent to *Deceive* . . . . . . . . . . . . . 14

        B.      The Requirement of an Intent to Deceive is Consistent with
                the Common Law Presumption that Criminal Statutes Require
                Proof of *Mens Rea*, and with the Need to Construe Statutes
                in a Manner that Avoids Questions of Constitutionality . . . . . . . . . . 17

        C.      The Requirement of an Intent to Deceive is Consistent with
                the Purpose of § 912 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        D.      *Tomsha-Miguel*'s Interpretation of the "Acting as Such" Element
                is Consistent with its Recognition that § 912 Requires Proof
                of Intent to Deceive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

II.   The District Court's Failure to Instruct the Jury on the Intent to Deceive Was Reversible Error . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    A.   The Failure to Instruct the Jury on Intent to Deceive Violated Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B.   The District Court's Instructional Error Was Not Harmless . . . . . . . . 25

III.  The District Court's Failure to Instruct the Jury on Materiality Was Reversible Error . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    A.   Section 912 Requires Proof of a Material Deception . . . . . . . . . . . . . 26

    B.   The Failure to Instruct the Jury on Materiality Was Error, and the Error Was Not Harmless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

IV.   The Evidence Was Insufficient to Support a § 912 Conviction . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## <u>TABLE OF AUTHORITIES</u>

### Federal Cases

*California v. Roy*,
519 U.S. 2 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*Elonis v. United States*,
– U.S. –, 135 S.Ct. 2001 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Honea v. United States*,
344 F.2d 798 (5th Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kungys v. United States*,
485 U.S. 759 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Liparota v. United States*,
471 U.S. 419 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Middleton v. McNeil*,
541 U.S. 433 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Morissette v. United States*,
342 U.S. 246 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Neder v. United States*,
527 U.S. 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22, 25, 28

*Sandstrom v. Montana*,
442 U.S. 510 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Staples v. United States*,
511 U.S. 600 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Alferahin*,
433 F.3d 1148 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 28

*United States v. Alvarez*,
– U.S. –, 123 S.Ct. 1537 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 27

*United States v. Barnow*,
239 U.S. 74 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Burt*,
143 F.3d 1215 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Cohen*,
631 F.2d 1223 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

*United States v. Cord*,
654 F.2d 490 (7th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Gaudin*,
515 U.S. 506 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Gayle*,
967 F.3d 483 (11th Cir. 1992) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

*United States v. Guthrie*,
387 F.2d 569 (4th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Hegwood*,
977 F.2d 492 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Jackson*,
444 F.3d 1026 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Lepowitch*,
318 U.S. 702 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15-16, 27, 29

*United States v. Marbella*,
73 F.3d 1508 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Mendoza*,
11 F.3d 126 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24-25

*United States v. Mitman*,
459 F.2d 451 (9th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 30

iv

*United States v. Montoya-Gaxiola*,
796 F.3d 1118 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

*United States v. Nevils*,
598 F.3d 1158 (9th Cir. 2010) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 29

*United States v. Paul*,
37 F.3d 496 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Perelman*,
695 F.3d 866 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*United States v. Robbins*,
613 F.2d 688 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20, 27, 29

*United States v. Rose*,
500 F.2d 12 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Rosser*,
528 F.2d 652 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Rubio-Villareal*,
967 F.2d 294 (9th Cir. 1992) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Smith*,
561 F.3d 934 (9th Cir. 2009) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Swisher*,
811 F.3d 299 (9th Cir. 2016) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*United States v. Tomsha-Miguel*,
765 F.3d 1041 (9th Cir. 2014) . . . . . . . . . . . . 3, 5, 12, 14-16, 18-21, 23, 27, 29-30

*United States v. United States Gypsum Co.*,
438 U.S. 422 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Warren*,
984 F.2d 325 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Wells*,
519 U.S. 482 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Wilkes*,
732 F.2d 1154 (3rd Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wilkes v. United States*,
469 U.S. 964 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Zadvydas v. Davis*,
533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Federal Statutes**

18 U.S.C. § 76 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 912 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

**Miscellaneous Authorities**

8th Cir. Crim. Jury Instr. 6.18.912 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

9th Cir. Crim. Jury Instr. 8.50 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11th Cir. Crim. Jury Instr. 33 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CA No. 16-10010

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CA. No. 16-10010 |
| Plaintiff-Appellee, | ) | |
| | ) | D.C. No. 15-00226 EJD |
| v. | ) | |
| | ) | |
| DOUGLAS STROMS YORK, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

## **<u>INTRODUCTION</u>**

This is a case about the level of *mens rea* necessary to transform a prank call into a federal crime. Douglas York left a 30-second voicemail in which he pretended to be "Judy Smith" from the IRS. The recipient of the voicemail immediately realized that the call was a fake and that Judy Smith was actually Mr. York. The recipient of the call reported Mr. York to the IRS, and Mr. York was eventually charged with felony false impersonation of a federal employee, in

1

violation of 18 U.S.C. § 912.

This Court has held that § 912 applies only to a narrow category of cases in which the defendant acted with the intent to deceive. Yet, the district court refused to instruct the jury that the government was required to prove that Mr. York acted with the intent to deceive, or any intent at all. The district court also failed to instruct the jury that the government was required to prove that the deception was material. These omissions were constitutional error requiring reversal. Moreover, because the evidence was insufficient as a matter of law to establish the elements of § 912, the district court erred in denying Mr. York's motion for a judgment of acquittal. The conviction should be reversed and the case remanded with instructions to grant the motion for a judgment of acquittal. At a minimum, the conviction should be vacated and the case remanded for a new trial.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over Mr. York's appeal from a final judgment pursuant to 28 U.S.C. § 1291.

## APPELLANT'S BAIL STATUS

Mr. York is currently serving his sentence of a year and a day in the custody of the Bureau of Prisons at Mendota FCI. His estimated release date is October 10, 2016.

2

## STATEMENT OF ISSUES PRESENTED ON APPEAL

(1)  Whether the district court committed reversible error by failing to instruct the jury that, in a prosecution for false impersonation of a federal employee, the government must prove beyond a reasonable doubt that the defendant acted with the intent to deceive.

(2)  Whether the district court committed reversible error by failing to instruct the jury that, in a prosecution for false impersonation of a federal employee, the government must prove beyond a reasonable doubt that the deception was material.

(3)  Whether the evidence was insufficient as a matter of law to establish a violation of 18 U.S.C. § 912, where the government failed to prove that Mr. York acted with the intent to deceive, and that Mr. York sought to cause someone to follow a course of action based upon a material deception.

## SUMMARY OF ARGUMENT

This Court has held that § 912 "reaches only those acts that are intentionally deceptive." *United States v. Tomsha-Miguel*, 766 F.3d 1041, 1049 (9th Cir. 2014) (citations omitted).  In this case, however, the district court refused to instruct the jury that § 912 requires proof that Mr. York acted with the intent to deceive. Instead, the district court gave an instruction that permitted the jury to convict Mr. York on the basis of strict liability.  The failure to instruct on the requisite *mens*

3

*rea* was constitutional error. Because the government cannot meet its burden of demonstrating that this error was harmless beyond a reasonable doubt, reversal is required.

The district court likewise erred in failing to instruct the jury that § 912 requires proof of a material deception. Where, as here, a statute contains an implicit materiality requirement, the failure to instruct on materiality violates due process. *See United States v. Alferahin*, 433 F.3d 1148, 1156 (9th Cir. 2006). That error was not harmless, because Mr. York "contested the omitted element and raised evidence sufficient to support a contrary finding." *Neder v. United States*, 527 U.S. 1, 19 (1999).

Finally, the evidence was insufficient as a matter of law to support a conviction under § 912. The evidence showed that Mr. York did not intend to deceive anyone; that Mr. York's 30-second voicemail was not designed to "cause the deceived person to follow some course of action" based on the deception, as is required under *United States v. Lepowitch*, 318 U.S. 702, 704 (1943); and that, in any event, nobody was actually deceived. Because the evidence was insufficient, the district court erred in denying Mr. York's motion for a judgment of acquittal.

## STANDARD OF REVIEW

Questions of statutory interpretation are reviewed de novo. *United States v. Marbella*, 73 F.3d 1508, 1515 (9th Cir. 1996).

4

This Court reviews de novo the legal sufficiency of jury instructions. *United States v. Smith*, 561 F.3d 934, 938 (9th Cir. 2009) (en banc) (citation omitted). An instructional error "requires reversal unless there is no reasonable possibility that the error materially affected the verdict or, in other words, that the error was harmless beyond a reasonable doubt." *United States v. Rubio-Villareal*, 967 F.2d 294, 297 n.3 (9th Cir. 1992) (en banc).

The district court's denial of a motion for a judgment of acquittal is reviewed de novo. *United States v. Tomsha-Miguel*, 765 F.3d 1041, 1044 (9th Cir. 2014) (citing *United States v. Jackson*, 444 F.3d 1026, 1029 (9th Cir. 2006)). In considering the sufficiency of the evidence, this Court "take[s] the evidence in the light most favorable to the government," and determines "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 1044 & n.1 (quoting *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc)) (emphasis in original).

## STATEMENT OF THE CASE

On April 22, 2015, a grand jury in the Northern District of California indicted defendant-appellant Douglas York on one count of false impersonation of an employee of the United States, in violation of 18 U.S.C. § 912. CR 1; ER 355.[1]

---

[1] Throughout this brief, "CR" refers to the district court docket sheet. "ER" refers to the Excerpts of Record.

On July 9, 2015, the grand jury returned a superseding indictment charging Mr. York with one count of false impersonation of an employee of the United States, in violation of 18 U.S.C. § 912 (Count One); and one count of telecommunications device harassment, in violation of 47 U.S.C. § 223(a)(1)(C) (Count Two).  CR 39; ER 351.

Jury trial commenced on August 25, 2015.  CR 64.  At the close of the government's case, Count Two was dismissed on the government's motion.  CR 77; ER 238.  Mr. York then moved for a judgment of acquittal on Count One, pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  ER 241.  The Rule 29 motion was denied,  ER 7, and on August 28, 2015, Mr. York was convicted of Count One, CR 77; ER 283-284.

On January 4, 2016, Mr. York was sentenced to a year and a day in the custody of the Bureau of Prisons, to be followed by one year of supervised release.  CR 96.  Judgment was entered on January 7, 2016.  CR 97; ER 10.

On January 7, 2016, Mr. York timely filed his notice of appeal.  CR 99; ER 9.

## STATEMENT OF FACTS

In February of 2012, Douglas York and his wife Andrea were in the process of getting divorced.  ER 35.  The divorce was less than amicable, and Ms. York began avoiding Mr. York's calls.  *See* ER 66, 68, 70.  Unable to reach his wife directly, Mr. York began calling her new boyfriend, Allan Hessenflow, instead.

*See id.* Mr. York's phone calls were not threatening, *see* ER 68, but they were annoying. Mr. York called "multiple times throughout the day and night,"[2] ER 65-66, and even though the calls were mostly just "things like trying to locate his ex," ER 65-66, 70, Mr. Hessenflow considered the calls "harassing," ER 65-66.

On February 23, 2012, Mr. Hessenflow received calls from Mr. York at 12:28 a.m., 12:30 a.m., 12:43 a.m., 10:34 a.m., 10:37 a.m., 10:39 a.m., 10:51 a.m., 10:56 a.m., 3:05 p.m., and 5:29 p.m. ER 64-65, 309-311. In addition, sandwiched between Mr. York's many voicemail messages, was the following voicemail:

> Hello, Allan. My name is [Judy][3] Smith. I'm with the IRS, Internal Revenue Service, and I'm calling you (garbled) tax audit some information (garbled) and we would like to check your records for the following years 2005, 2006, 2007, and if you could please return my call at the number listed on your caller ID that would be appreciated. And, once again, if we cannot reach you, we will definitely be checking into your past, and I'll be looking into your records. Thanks a lot and we'll call you back tomorrow.

ER 51; 77.[4] The number displayed on the caller ID was 708-565-1040, with the last four digits apparently meant as a nod to the 1040 tax form. ER 39-40.

---

[2] Between February 16, 2012, and March 16, 2012, Mr. York called Mr. Hessenflow 31 times. ER 65, 209-210, 308-328.

[3] Although Mr. Hessenflow transcribed the name as "Gigi," *see* ER 51, it seems more likely that the caller actually said "Judy," *see* ER 203.

[4] Mr. York is submitting a motion to transmit physical exhibit, in which he seeks leave to provide the Court with a CD containing a recording of the voicemail message. The instructions for playing the CD appear at ER 77.

Mr. Hessenflow immediately suspected that the call was not really from the IRS, and that "Judy Smith" was actually Douglas York.[5] ER 48-49, 68-69. Mr. Hessenflow would later explain that he "believed it was originated by Mr. York" because "it followed the same pattern of harassment that had been the previous week of phone calls that he had been engaged in." ER 49.[6] In addition, the "language used in the voicemail" made Mr. Hessenflow "suspicious," ER 69, and he became even more suspicious when he was unable to find any listing for the number 708-565-1040 on Google, ER 40.

The following day, Mr. Hessenflow sent an email to the Treasury Inspector General for Tax Administration (TIGTA). The subject line read: "Impersonating IRS Personnel." ER 50, 331. In the body of the email, Mr. Hessenflow wrote:

> Hello, on Thursday, February 23, 2012, at 1:25 p.m. I received a message on my home phone answering machine claiming to be from the I.R.S. I have kept the recording. The number on the caller ID was 708-565-1040, and I believe that number was spoofed, and I believe I know who is behind it, Douglas York of Morgan Hill, California, as this follows a general pattern of harassment from him.

---

[5] Although the caller claimed to be a woman, Mr. Hessenflow correctly surmised that the call had been made with Spoofcard, an application which enables a caller to alter the sound of his or her voice, and to change the phone number that appears on the recipient's caller ID. ER 52, 63-64.

[6] Other evidence offered at trial concerning Mr. York's "pattern of harassment" included a Facebook post in which Mr. York complained about Mr. Hessenflow, *see* ER 52-53, 333, and a fake craigslist ad listing Mr. Hessenflow's Porsche for sale for $1.00, *see* ER 46-47, 332.

8

ER 50-51.

In a subsequent interview with TIGTA Special Agent Donna Aguirre, Mr. Hessenflow reiterated that he knew the call was not really from the IRS. *See* ER 68-69. Agent Aguirre's investigation confirmed that there was no IRS employee named Gigi or Judy Smith, and that 708-565-1040 was not a valid IRS phone number.[7] ER 203-204. Having confirmed that the call was indeed fake, Agent Aguirre subpoenaed Mr. York's phone records and the relevant records from Spoofcard, both of which led her to conclude that Mr. York had made the call. ER 205-214.

Three years later, on April 22, 2015, Mr. York was indicted on one count of false impersonation of an employee of the United States, in violation of 18 U.S.C. § 912.[8] CR 1, ER 355. Jury trial commenced on August 25, 2015. CR 64.

At trial, Mr. Hessenflow testified about Mr. York's incessant phone calls and explained why he immediately suspected that Mr. York was behind the fake IRS call. *See* ER 35-71. A custodian of records for Teltech Systems, the company that

---

[7] In addition, when Agent Aguirre dialed the phone number herself, she found that the number was not in service. ER 235-236.

[8] The grand jury subsequently returned a superseding indictment which added one count of telecommunications device harassment, in violation of 47 U.S.C. § 223(a)(1)(C). The harassment count was dismissed on the government's motion at the close of its case-in-chief because the government was unable to establish an interstate nexus. CR 77; ER 238.

9

sells and services the Spoofcard application, testified that Teltech's records showed that the fake IRS call had been made from Mr. York's phone, using a Spoofcard account opened in Mr. York's name and paid for with Mr. York's credit card. ER 180-199; *see also* ER 291. Finally, TIGTA Special Agent Donna Aguirre testified about her investigation. ER 199-236.

At the conclusion of the government's case-in-chief, the defense moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. ER 241. The motion was denied. ER 7.

Before the jury was instructed, the defense submitted the following proposed instruction regarding the elements of § 912:

> It is a Federal crime to falsely impersonate an officer of the United States.
>
> The Defendant can be found guilty of this crime only if all of the following facts are proved beyond a reasonable doubt:
>
> (1)    the Defendant pretended to be an officer or employee acting under the authority of the United States;
>
> (2)    the Defendant acted as such;
>
> (3)    the Defendant did so knowingly and with intent to deceive another.
>
> For purposes of this offense, to act "with intent to deceive" means that the defendant, while so pretending, acted with the intent to cause a person to follow some course of action or inaction.

10

ER 108, 337.

In addition, this proposed instruction incorporated by reference the following language concerning materiality from an instruction that had previously been proposed by the defense:

> Additionally, the government must prove beyond a reasonable doubt materiality: either that the statement was capable of influencing Mr. Hessenflow or that Mr. York had an expectation that Mr. Hessenflow would actually or reasonably rely on the statement.

ER 86-88, 334, 337.

The defense acknowledged that the Ninth Circuit has a model jury instruction for § 912,[9] but argued that the model instruction is deficient because it does not inform the jury of § 912's *mens rea* requirement. *See* ER 109-110, 118.

---

[9]  The model instruction states:

The defendant is charged in [Count ___ of] the indictment with fraud while impersonating a federal officer or employee in violation of Section 912 of Title 18 of the United States Code.  In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant falsely pretended to be an [officer] [employee] acting under the authority of [the United States] [*specify federal department, agency or officer*]; and

Second, the defendant [acted as such] [in such pretended character demanded or obtained [*specify thing of value*]].

9th Cir. Crim. Jury Instr. 8.50 (2010).

Specifically, the defense argued the model instruction turns § 912 into a strict liability crime, which is contrary to this Court's holding in *United States v. Tomsha-Miguel*, 765 F.3d 1041 (9th Cir. 2014), that § 912 requires proof that the defendant acted with the intent to deceive. *See* ER 109-110, 118. For this reason, the defense proposed that the district court give a modified version of the Ninth Circuit's model instruction, incorporating language from model instructions used in the Eighth and Eleventh Circuits. *Id.*; *see also* ER 343-350.

The government, in turn, argued that the Ninth Circuit model instruction was adequate because: (1) this Court has held that the intent to defraud is not an element of § 912; and (2) to the extent that proof of the intent to deceive, as opposed to the intent to defraud, *is* required, it is already incorporated into the elements as described by the model instruction. *See* ER 114-115.

The district court declined to give the defense's proffered instruction, stating:

> I think what you're suggesting the Court to do is to depart
> from fidelity from the Ninth Circuit model instruction and
> adopt the not just the Eighth or the Eleventh Circuit but a
> hybrid of both of those. I think that's what your suggested
> instruction has.
>
> * * * * *
>
> I'm going to use the – I am going to owe fidelity to the
> Ninth Circuit model, and I believe the Ninth Circuit model
> does provide sufficient guidance to the jury and so over
> your objection I'm going to give the model 8.50 and
> preserve the argument obviously for the record.

12

ER 2; *see also* ER 3-4.

Consistent with its ruling, the Court gave the following jury instruction regarding § 912:

> The defendant is charged in Count 1 of the Indictment with fraud while impersonating a federal officer or employee in violation of section 912 of Title 18 of the United States Code.
>
> In order to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt.
>
> First, that the defendant falsely pretended to be an officer or employee acting under the authority of the United States Internal Revenue Service; and,
>
> Second, the defendant acted as such.

ER 276.

Approximately one hour after it began its deliberations, the jury returned a guilty verdict. CR 78; ER 283-285.

On January 4, 2016, the court sentenced Mr. York to a year and a day in the custody of the Bureau of Prisons, to be followed by one year of supervised release. CR 96; ER 10. This appeal followed.

## ARGUMENT

**I.    Section 912 Requires the Government to Prove that the Defendant Acted with the Intent to Deceive**

   **A.    While § 912 Does Not Require Proof of Intent to *Defraud*, the Statute Does Require Proof of Intent to *Deceive***

Mr. York was convicted of violating 18 U.S.C. § 912, which provides in relevant part:

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such … shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 912.

In its original version, the federal false impersonation statute required proof of "intent to defraud." *United States v. Tomsha-Miguel*, 765 F.3d 1041, 1050 (9th Cir. 2014).[10]  In 1943, however, the Supreme Court concluded that it was unnecessary to specifically allege an intent to defraud, because "the words 'intent to defraud' in the context of this statute, do not require more than that the

_____

[10]  Title 18 U.S.C. § 76, the precursor to § 912, provided, in relevant part: "Whoever, *with intent to defraud* either the United States or any person, shall falsely assume or pretend to be an officer or employee acting under the authority of the United States or any department, or any officer of the Government thereof, or under the authority of any corporation owned or controlled by the United States, and shall take upon himself to act as such … shall be fined not more than $1,000 or imprisoned not more than three years, or both."  18 U.S.C. § 76 (1940) (emphasis added).

14

defendants have, by artifice and deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct." *United States v. Lepowitch*, 318 U.S. 702, 704 (1943).

Five years after *Lepowitch* was decided, Congress amended the false impersonation statute. The revised version, codified at § 912, "does not include any reference to an 'intent to defraud.'" *Tomsha-Miguel*, 765 F.3d at 1050. According to the Reviser's Notes, "[t]he words 'with the intent to defraud the United States or any person,' … were omitted as meaningless in view of" *Lepowitch*. 18 U.S.C. § 912 Reviser's Notes (1948).

In the years that followed, most circuits, including this Court, held that "since the intent to defraud language was deleted from the statute in [the] 1948 revision, such an intent need not be specifically pleaded and proved."[11] *Wilkes v. United States*, 469 U.S. 964, 964-65 (1984) (White, J., dissenting from denial of certiorari). *See, e.g., United States v. Mitman*, 459 F.2d 451 (9th Cir. 1972); *United States v. Rose*, 500 F.2d 12 (2d Cir. 1974), vacated on other grounds, 422 U.S. 1031 (1975); *United States v. Wilkes*, 732 F.2d 1154 (3rd Cir. 1984); *United States v. Guthrie*, 387 F.2d 569 (4th Cir. 1967); *United States v. Cord*, 654 F.2d 490 (7th Cir. 1981); *United States v. Robbins*, 613 F.2d 688 (8th Cir. 1979);

---

[11] The exception is the Fifth Circuit, which continues to require that the intent to defraud be alleged in the indictment and proven beyond a reasonable doubt. *See Honea v. United States*, 344 F.2d 798 (5th Cir. 1965).

*United States v. Gayle*, 967 F.3d 483 (11th Cir. 1992) (en banc); *United States v. Rosser*, 528 F.2d 652 (D.C. Cir. 1976).[12]

But while § 912 no longer requires proof that the defendant acted with the intent to *defraud*, it does require proof that the defendant acted with the intent to *deceive*. In *Tomsha-Miguel*, this Court's most recent decision construing § 912, the Court reaffirmed that an intent to defraud is not an element of § 912. *See Tomsha-Miguel*, 766 F.3d at 1050. At the same time, however, the Court held that § 912 does "incorporate an intent to *deceive*." *Tomsha-Miguel*, 766 F.3d at 1049 (emphasis added) (citing *Lepowitch*, 318 U.S. at 704); *accord United States v. Perelman*, 695 F.3d 866, 871 (9th Cir. 2012) (citing § 912 as an example of a statute that "reaches only intentionally deceptive acts, thus limiting the statute's reach to a narrow range of conduct"), overruled on other grounds by *United States v. Swisher*, 811 F.3d 299 (9th Cir. 2016) (en banc).

---

[12] Arguably, the majority view suffers from a failure to recognize that the 1948 amendment occurred "at a time when a different view of statutory interpretation held sway." *United States v. Wells*, 519 U.S. 482, 509 (1997) (Stevens, J., dissenting). As Justice Stevens explained in *Wells*, in the context of the 1948 revision of another statute, such revisions occurred during a time when "Congress looked to the courts to play an important role in the lawmaking process by relying on common-law tradition and common sense to fill gaps in the law." *Id.*

**B.    The Requirement of an Intent to Deceive is Consistent with the Common Law Presumption that Criminal Statutes Require Proof of *Mens Rea,* and with the Need to Construe Statutes in a Manner that Avoids Questions of Constitutionality**

*Tomsha-Miguel*'s reading of § 912 is consistent with "'the background rules of the common law, … in which the requirement of some *mens rea* for a crime is firmly embedded.'"  *United States v. Alvarez*, – U.S. –, 123 S.Ct. 2537, 2552-53 (Breyer, J., concurring in the judgment) (quoting *Staples v. United States*, 511 U.S. 600, 605 (1994)); *see also id.* at 2557 n.1 (Alito, J., dissenting).

It is true that § 912 does not mention intent.  "The fact that a statute does not specify any required mental state, however, does not mean that none exists." *Elonis v. United States*, – U.S. –, 135 S.Ct. 2001, 2009 (2015).  As the Supreme Court recently reiterated in *Elonis*:  "We have repeatedly held that 'mere omission from a criminal enactment of any mention of criminal intent' should not be read 'as dispensing with it."  *Id.* (quoting *Morissette v. United States*, 342 U.S. 246, 250 (1952)); *see also United States v. United States Gypsum Co.*, 438 U.S. 422, 437-38 (1978) (noting that because Congress is "presumed to have legislated against the background of our traditional legal concepts which render intent a critical factor," the Supreme Court has consistently held that "far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement"); *Liparota v. United*

*States*, 471 U.S. 419, 426 (1985) ("[T]he failure of Congress explicitly and unambiguously to indicate whether *mens rea* is required does not signal a departure from the background assumption of our criminal law.").

This rule applies with particular force where, as here, the failure to read an intent requirement into a statute would raise "a 'serious doubt' as to the statute's constitutionality." *Perelman*, 695 F.3d at 870 (citing *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)). In *Tomsha-Miguel*, this Court held that because § 912 reaches only "a narrow range of conduct limited to intentionally deceptive acts," the statute does not violate the First Amendment. *Tomsha-Miguel*, 766 F.3d at 1049 & n.3. Implicit in this holding was an acknowledgment that if § 912 were construed as extending beyond acts that are "intentionally deceptive," it would likely run afoul of the First Amendment. *See id.*[13]

### C.  The Requirement of an Intent to Deceive is Consistent with the Purpose of § 912

The purpose of § 912 is to safeguard "the general good repute and dignity" of the federal government. *United States v. Barnow*, 239 U.S. 74, 80 (1915); *see also*

---

[13]  If anything, the risk that a broader reading of § 912 would violate the First Amendment is greater than *Tomsha-Miguel* recognized. In *Tomsha-Miguel*, the Court applied intermediate scrutiny, in reliance on *United States v. Perelman*. *See id.* (citing *Perelman*, 695 F.3d at 871-72). This Court's subsequent en banc decision in *Swisher* rejected *Perelman*'s approach, however, and strongly suggested that statutes like § 912 are subject to a stricter level of scrutiny. *See Swisher*, 811 F.3d at 314-15.

*Alvarez*, 132 S.Ct. at 2546 (plurality opinion). Requiring proof of intent to deceive is consistent with that purpose. When an individual pretends to be a federal employee but does not seek to deceive, there is no risk to the federal government's dignity. If, for example, someone dresses up as an FBI agent at a costume party or on the playground, it does not affect "the general good repute and dignity" of United States government – even if that person does something silly or offensive – because it is understood by all that the person is not really an FBI agent, and that his or her actions do not reflect on the government. It is only when the impersonator actually intends to deceive that there is a chance that the federal government's image will be tarnished.[14]

### D. *Tomsha-Miguel*'s Interpretation of the "Acting as Such" Element is Consistent with its Recognition that § 912 Requires Proof of Intent to Deceive

*Tomsha-Miguel*'s interpretation of the "acting as such" element must be read in light its recognition that § 912 "incorporates an intent to deceive." *Tomsha-Miguel*, 766 F.3d at 1049. The defendant in *Tomsha-Miguel* was a bookkeeper/tax preparer whose client had requested help in resolving a dispute with the IRS. Ms. Tomsha-Miguel made a minimal effort to obtain the assistance of a member of

---

[14] Even then, it is unlikely that the government's reputation will be affected unless the pretense is successful. No matter how desperately a five-year-old child may wish to persuade people that he is a real federal agent, there is no harm to the government if nobody believes him.

Congress, but never followed through. *Id.* at 1043-44. Instead, she wrote herself a pretend letter from a fictitious congressional aide, in which the imaginary aide assured her that her client's tax dispute would be the Congressman's "number one priority." *Id.* She forwarded the letter to her client, who did not discover that the letter was fake until he attempted to follow up with the Congressman's office. *Id.* at 1044. On appeal, the defendant argued that there was insufficient evidence that she had "acted as" the imaginary congressional aide because, "after fabricating the letter, … she took no additional action on behalf of the fictional aide." *Id.* at 1046.

This Court disagreed. Citing decisions from the Fifth, Eighth, and Eleventh Circuits, the Court explained that "[a]lthough a defendant must engage in actions that go beyond 'mere bravado,' it is sufficient to show that the defendant 'falsely assumed and pretended' and committed an act in keeping with that assumed character." *Id.* (quoting *United States v. Cohen*, 631 F.2d 1223, 1224 (5th Cir. 1980), and *Robbins*, 613 F.2d at 692, and citing *Gayle*, 967 F.2d at 487). Viewing the evidence in the light most favorable to the prosecution, the Court concluded that a reasonable jury could have found that the defendant "acted as such" when she "faxed the letter to her client, Garcia, in order to effectuate the impersonation and convince Garcia that the Congressman's office was seeking to resolve his tax dispute with the IRS." *Tomsha-Miguel*, 766 F.3d at 1046.

Significantly, all of the decisions relied upon in *Tomsha-Miguel* come from

20

circuits that require proof of intent to deceive. In the Fifth Circuit, the government must plead and prove an intent to defraud. *See Cohen*, 631 F.2d at 1224. In the Eighth Circuit, the government must prove beyond a reasonable doubt that the defendant "acted with the intent to cause a person to follow some course of action or inaction." 8th Cir. Crim. Jury Instr. 6.18.912 (2014). And in the Eleventh Circuit, the government must prove beyond a reasonable doubt that the defendant acted "knowingly with intent to deceive or defraud another." 11th Cir. Crim. Jury Instr. 33 (2010) (citing *Gayle*, 967 F.2d at 486-87).

Moreover, in *Tomsha-Miguel* itself, the evidence clearly established an intent to deceive. *See Tomsha-Miguel*, 766 F.3d at 1046 (holding that a reasonable jury could find that the defendant acted "in order to effectuate the impersonation *and convince* Garcia that the Congressman's office was seeking to resolve his tax dispute with the IRS") (emphasis added).

## II. The District Court's Failure to Instruct the Jury on the Intent to Deceive Was Reversible Error

Because the appellant in *Tomsha-Miguel* did not challenge the jury instructions, this Court had no occasion to address the question presented here, namely, whether the jury must be instructed that § 912 requires proof of intent to deceive. But given *Tomsha-Miguel*'s holding that § 912 reaches only a "narrow range of conduct limited to intentionally deceptive acts," it necessarily follows

that the failure to instruct the jury on the requisite intent violates due process.

A.     **The Failure to Instruct the Jury on Intent to Deceive Violated Due Process**

In a criminal trial, the prosecution "must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520-21 (1979)); *see also United States v. Mendoza*, 11 F.3d 126, 128 (9th Cir. 1993) ("[W]hen a trial judge omits an element of the offense charged from the jury instructions, it deprives the jury of its fact-finding duty and violates the defendant's due process rights.").

In the district court, the government argued that there is no need to specifically instruct the jury on the intent to deceive because the intent to deceive is not a freestanding element, but rather is "incorporated" into the elements identified in the model instruction. *See* ER 114-115. This argument is unavailing because, as the Supreme Court has made clear, it makes no difference whether a district court's failure to instruct is characterized as a complete omission of an element or only a misstatement of some aspect of an element; "[i]n both cases – misdescriptions and omissions – the erroneous instruction precludes the jury from making a finding on the *actual* element of the offense." *Neder v. United States*, 527 U.S. 1, 10 (1999) (emphasis in original); *see also California v. Roy*, 519 U.S.

2, 25 (1996) (observing that "an error in the instruction that defined the crime" could be "as easily characterized as a misdescription of an element of the crime, as it is characterized as an error of omission") (citation and internal quotations omitted).

In this case, the district court gave the following instruction:

> The defendant is charged in Count 1 of the Indictment with fraud while impersonating a federal officer or employee in violation of section 912 of Title 18 of the United States Code.
>
> In order to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt.
>
> First, that the defendant falsely pretended to be an officer or employee acting under the authority of the United States Internal Revenue Service; and,
>
> Second, the defendant acted as such.

ER 276.

Whether the intent to deceive is viewed as a separate element or as a concept that is incorporated into another element, the result is the same: Nothing in the model instruction, as given by the district court, informed the jury that § 912 reaches only "a narrow range of conduct limited to intentionally deceptive acts." *Tomsha-Miguel*, 766 F.3d at 1049. The jury instruction given in this case rendered the defendant's intent irrelevant.

23

It makes no difference that the district court's instruction closely tracked the Ninth Circuit model instruction. This Court has long recognized that "[t]he fact that the district court used a model jury instruction or a modification thereof does not preclude a finding of error." *Mendoza*, 11 F.3d at 1128 n.2 (citing *United States v. Warren*, 984 F.2d 325, 327 n.3 (9th Cir. 1993), and *United States v. Hegwood*, 977 F.2d 492, 495-96 (9th Cir. 1992)). *See, e.g., Mendoza*, 11 F.3d at 128-29 (district court's use of a jury instruction based on the then-current Ninth Circuit Model Instruction setting forth the elements of 18 U.S.C. § 924(c) was reversible error); *United States v. Montoya-Gaxiola*, 796 F.3d 1118, 1123 (9th Cir. 2015) (district court's use of Ninth Circuit Model Criminal Instruction 9.34 was reversible error because jury was not instructed on the *mens rea* required for conviction); *United States v. Burt*, 143 F.3d 1215, 1219 (9th Cir. 1998) (district court's use of invalid model entrapment instruction was plain error); *United States v. Paul*, 37 F.3d 496, 497 (9th Cir. 1994) (district court's use of Ninth Circuit model jury instructions for voluntary and involuntary manslaughter constituted plain error).

What is important is not whether the instruction followed the model, but whether the instruction informed the jury of everything that the government needed to prove. This instruction did not. The omission of any instruction on the intent to deceive was instructional error and a violation of due process.

24

**B.      The District Court's Instructional Error Was Not Harmless**

Where, as here, the defendant objected to an erroneous jury instruction, this Court reviews for harmless error.  *See Mendoza*, 11 F.3d at 129.  The government bears the burden of proving that the error was harmless and this burden "is a high one."  *Montoya-Gaxiola*, 796 F.3d at 1124.  "The harmless error test for an erroneous jury instruction is 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  *Id.* (quoting *Neder*, 527 U.S. at 15).  As the Supreme Court has recognized,

> safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record.  If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error – for example, *where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding* – it should not find the error harmless.

*Neder*, 527 U.S. at 19 (emphasis added).

In this case, Mr. York vigorously "contested the omitted element and raised evidence sufficient to support" a finding that Mr. York never intended to deceive Mr. Hessenflow.  Indeed, a reasonable juror could have found that Mr. York's actions were consistent with those of someone who *wanted* Mr. Hessenflow to know that he was behind the voicemail.  As Mr. Hessenflow testified, the voicemail message was sandwiched between 11 other voicemail messages left by Mr. York that same day, and "followed the same pattern" as Mr. York's other

25

harassing phone calls, ER 48, 64-65; the deliberately unprofessional wording of the voicemail message – "if we cannot reach you, we will definitely be checking into your past" – made Mr. Hessenflow "suspicious," ER 69; and the voice was so obviously disguised that Mr. Hessenflow immediately suspected that the caller had been made with a spoofing application, ER 52, 63-64. And while the government argued that Mr. York used a fake phone number ending in 1040 to make the message seem more authentic, ER 270, a reasonable juror could have reached the opposite conclusion, namely, that when Mr. York told Mr. Hessenflow to "return my call at the number listed on your caller ID," ER 51, he did so knowing that if Mr. Hessenflow called that made-up number, he would immediately realize that the call was a prank.

Given the evidence, the government cannot meet its high burden of proving beyond a reasonable doubt that the jury verdict would have been the same absent the instructional error.

## III. The District Court's Failure to Instruct the Jury on Materiality Was Reversible Error

### A. Section 912 Requires Proof of a Material Deception

In *Lepowitch*, the Supreme Court held that § 912 requires proof that the defendant has "by artifice and deceit, sought to cause the deceived person to follow some course of action he would not have pursued but for the deceitful

conduct." *Lepowitch*, 318 U.S. at 704. Stated differently, *Lepowitch* requires that the defendant engage in a deception that is material, i.e., a deception that has "'a natural tendency to influence, or [be] capable of influencing, the decision'" of the individual to whom to deception is addressed. *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)). Indeed, it is difficult to imagine a situation in which a defendant would seek to "cause the deceived person to follow some course of action" by employing a deception that lacks "a natural tendency to influence" the deceived.

Both this Court and the Supreme Court have recognized that *Lepowitch* remains good law. *See Tomsha-Miguel*, 766 F.3d at 1049 (quoting *Lepowitch*); *Alvarez*, 123 S.Ct. at 2554 (Breyer, J., concurring) (same).[15] Accordingly, a conviction under § 912 requires proof of a material deception.

### B. The Failure to Instruct the Jury on Materiality Was Error, and the Error Was Not Harmless

When a statute includes an implicit materiality requirement, the failure to

---

[15] Justice Breyer's concurrence actually goes further, suggesting that § 912 requires proof of reliance, as well. *See id.* (describing § 912 as requiring a showing that "someone *was deceived* into following a 'course [of action] he would not have pursued but for the deceitful conduct'") (quoting *Lepowitch*, 318 U.S. at 704) (emphasis added). This construction of § 912 is in accord with the construction adopted by the Eighth Circuit. *See Robbins*, 613 F.2d at 619 (concluding that "the language in *Lepowitch* puts some substance into the 'acts as such' element, requiring *reliance* on the impersonator's assertion of authority") (emphasis added).

instruct on materiality is constitutional error. *See United States v. Alferahin*, 433 F.3d 1148, 1156 (9th Cir. 2006) (district court committed plain error by failing to instruct jury that 18 U.S.C. § 1425(a) contains a materiality requirement).

In this case, that error was not harmless, because Mr. York "contested the omitted element and raised evidence sufficient to support a contrary finding." *Neder*, 527 U.S. at 19. A reasonable juror could have found that Mr. York did not engage in a deception that had a natural tendency to influence, or be capable of influencing, Mr. Hessenflow. On the contrary, Mr. York went out of his way to ensure that Mr. Hessenflow would *not* act on his request. Mr. York did not ask Mr. Hessenflow to deliver the tax records to a real location, or to mail them to a real address; instead, he directed Mr. Hessenflow to call an out-of-service phone number. Mr. Hessenflow was not fooled by Mr. York's masquerade, but even if he had been, it would have been impossible for Mr. Hessenflow to carry out "Judy Smith's" instructions.

Under these circumstances, the failure to instruct the jury on materiality was not harmless.

## IV. The Evidence was Insufficient to Support a § 912 Conviction

Even if the district court did not commit instructional error, the conviction still must be reversed because there was insufficient evidence that when Mr. York falsely identified himself as an IRS employee, he "acted as such."

28

When considering a challenge to the sufficiency of the evidence, this Court construes the evidence "in the light most favorable to the prosecution," and then determines "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Tomsha-Miguel*, 765 F.3d at 1044 (quoting *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc)). Here, taken in the light most favorable to the government, the evidence was insufficient to show that Mr. York, "by artifice and deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct." *Lepowitch*, 318 U.S. at 704. Mr. York did not try to trick Mr. Hessenflow into turning over his tax records. He did not, for example, instruct Mr. Hessenflow to mail his tax records to a particular address, or to bring the tax records to a particular location where Mr. York could retrieve them. Instead, Mr. York told Mr. Hessenflow to "return my call at the number listed on your caller ID," knowing that, if Mr. Hessenflow did so, he would immediately realize that the call was a fake. Far from seeking "to cause the deceived person to follow some course" of action, Mr. York made sure that it would be impossible for Mr. Hessenflow to act on his pretend request.

The lack of any evidence that Mr. York actually sought to induce Mr. Hessenflow to act in response to his "assertion of authority," *Robbins*, 613 F.2d at 691, distinguishes the present case from cases in which this Court has found the

evidence sufficient to support a conviction under the "acting as such" prong of §

912. In *Tomsha-Miguel*, the defendant faxed a fraudulent letter to her client "in

order to effectuate the impersonation and *convince Garcia* that the Congressman's

office was seeking to resolve his tax dispute with the IRS." *Tomsha-Miguel*, 766

F.3d at 1046 (emphasis added). And in *Mitman*, the defendant not only *sought* to

cause the deceived people to follow a course of action; he succeeded. *See Mitman*,

459 F.2d at 453 (upholding conviction under § 912 where the "evidence was

overwhelming that defendant had defrauded a number of businessmen out of

substantial amounts of property by falsely pretending to be a United States

government official").[16]

Unlike the conduct at issue in *Tomsha-Miguel* and *Mitman*, the conduct in

this case was not designed to deceive anyone, and it did not. Moreover, there is no

evidence that Mr. York sought to cause Mr. Hessenflow to follow a course of

action based on the false impersonation. The evidence *did* demonstrate that Mr.

York intended to annoy Mr. Hessenflow, but that is not enough for a conviction

under § 912.

---

[16] While not precedential, *United States v. Hanover*, 522 Fed. Appx. 420 (9th Cir. 2013) (unpublished memorandum), provides another example. *See id.* at 422 ("The evidence before the district court demonstrated that Hanover not only told the victim that she was an FBI agent, but also elicited information from the victim in that capacity – information the victim would never have provided, but for Hanover's ruse.").

30

## **CONCLUSION**

For the reasons set forth above, it is respectfully requested that this Court reverse Mr. York's conviction based on the insufficiency of the evidence, and direct the district court to enter a judgment of acquittal. In the alterative, Mr. York respectfully requests that his conviction be vacated and the case remanded for a new trial.

Dated: May 9, 2016

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender

 s/ Graham Archer
GRAHAM ARCHER
Assistant Federal Public Defender

 s/ Mara K. Goldman
MARA K. GOLDMAN
Research and Writing Attorney

31

## <u>STATEMENT OF RELATED CASES</u>

Counsel for defendant-appellant Douglas Stroms York is unaware of any

related cases pending in this Court.

Dated: May 9, 2016


Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender

 s/ Graham Archer
GRAHAM ARCHER
Assistant Federal Public Defender

## <u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth

Circuit Rule 32-1.

    I certify that:

    Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the

attached opening brief is proportionately spaced, has a typeface of 14 points or

more, and contains 8,158 words (opening briefs must not exceed 14,000 words).

Date: May 9, 2016

                 s/ Graham Archer
                 GRAHAM ARCHER
                 Assistant Federal Public Defender

## <u>CERTIFICATE OF SERVICE</u>

### USCA No. 16-10010

I hereby certify that on May 9, 2016, I electronically filed the foregoing with the Clerk of the Court for the Untied States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

 s/ Susie Barrera
SUSIE BARRERA
Legal Assistant