**No. 16-10010**

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DOUGLAS STORMS YORK,

Defendant-Appellant.

_____

**BRIEF FOR THE UNITED STATES AS APPELLEE**

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 5:15-CR-00226 EJD

_____

**BRIAN J. STRETCH**
United States Attorney

**BARBARA J. VALLIERE**
Chief, Appellate Division

**JONAS LERMAN**
Assistant United States Attorney
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 436-7241

**Attorneys for Plaintiff-Appellee**
July 25, 2016    **UNITED STATES OF AMERICA**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

JURISDICTION, TIMELINESS, AND BAIL STATUS ......................... 2

ISSUES PRESENTED ........................................................................ 3

STATEMENT OF THE CASE .............................................................. 3

    A.    Offense Conduct ..................................................................... 4

    B.    Sentencing .............................................................................. 9

SUMMARY OF ARGUMENT ............................................................. 11

ARGUMENT ....................................................................................... 11

    I.    THE EVIDENCE WAS SUFFICIENT TO SUPPORT
        THE JURY'S GUILTY VERDICT .................................... 11

        A.    Standard Of Review ................................................ 11

        B.    Argument ................................................................ 12

            1.    York falsely pretended to be an IRS employee .............. 14

            2.    York acted "as such" ...................................... 16

    II.    THE DISTRICT COURT CORRECTLY INSTRUCTED
        THE JURY ON THE ELEMENTS OF SECTION 912 .................... 24

        A.    Standard Of Review ................................................ 24

        B.    Procedural Background ............................................ 24

        C.    "Intent to Deceive" Is Not A Separate Element Of
            Section 912, But Is Incorporated Into The Two Elements
            Recognized By This Court ........................................ 28

i

1.  This Court has already held that Section 912[1]  "has two elements" and has endorsed the model jury instruction used here .................................................30

2.  *Tomsha-Miguel*'s constitutional analysis of Section 912 is consistent with the district court's jury instruction here......................................................32

3.  York's "intent to deceive" argument is merely a repackaging of his prior incorrect "intent to defraud" argument .......................................................36

D.  "Materiality" Is Not An Element Of Section 912....................40

III.  EVEN IF THE DISTRICT COURT COMMITTED INSTRUCTIONAL ERROR, THE ERROR WAS HARMLESS......45

A.  Standard Of Review ......................................................45

B.  Argument .................................................................46

CONCLUSION ....................................................................48

STATEMENT OF RELATED CASES ........................................49

CERTIFICATE OF COMPLIANCE........................................50

CERTIFICATE OF SERVICE ...............................................51

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Caruso v. United States*, 414 F.2d 225 (5th Cir. 1969) ...........................................44

*Heskett v. United States*, 58 F.2d 897 (9th Cir. 1932) ..............................................22

*Jackson v. Virginia*, 443 U.S. 307 (1979) .................................................................11

*Kungys v. United States*, 485 U.S. 759 (1988) .........................................................41

*Neder v. United States*, 527 U.S. 1 (1999) .................................................. 41, 45, 47

*United States v. Achtner*, 144 F.2d 49 (2d Cir. 1944) ...............................................34

*United States v. Aguilar*, 756 F.2d 1418 (9th Cir. 1985)................................... 12, 42

*United States v. Barnow*, 239 U.S. 74 (1915)............................................... 28, 41, 42

*United States v. Bushrod*, 763 F.2d 1051 (9th Cir. 1985) ............. 12, 29, 38, 42, 43

*United States v. Chappell*, 691 F.3d 388 (4th Cir. 2012) ................................. 34, 36

*United States v. Garcia*, 729 F.3d 1171 (9th Cir. 2013).................................. 24, 45

*United States v. Gaudin*, 515 U.S. 506 (1995) ........................................................45

*United States v. Gayle*, 967 F.2d 483 (11th Cir. 1992) (en banc) ............. 37, 38, 39

*United States v. Guthrie*, 387 F.2d 569 (4th Cir. 1967)...........................................39

*United States v. Hamilton*, 276 F.2d 96 (7th Cir. 1960)...........................................14

*United States v. Hanover*, 522 F. App'x 420 (9th Cir. 2013).............. 20, 21, 22, 29

*United States v. Lepowitch*, 318 U.S. 702 (1943).......................... 13, 18, 28, 38, 47

*United States v. Maxwell*, 920 F.2d 1028 (D.C. Cir. 1990)....................................44

*United States v. Mitman*, 459 F.2d 451 (9th Cir. 1972)................................... 29, 32

*United States v. Munguia*, 704 F.3d 596 (9th Cir. 2012).........................................45

*United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) (en banc).........................11

*United States v. Parker*, 699 F.2d 177 (4th Cir. 1983)...........................................22

*United States v. Randolph*, 460 F.2d 367 (5th Cir. 1972) ............................... 37, 38

*United States v. Rippee*, 961 F.2d 677 (7th Cir. 1992)...........................................13

*United States v. Robbins*, 613 F.2d 688 (8th Cir. 1979)..........................................18

*United States v. Rosser*, 528 F.2d 652 (D.C. Cir. 1976).................................. 13, 18

*United States v. Thongsy*, 577 F.3d 1036 (9th Cir. 2009) .......................................45

*United States v. Tomsha-Miguel*, 766 F.3d 1041 (9th Cir. 2014)................... *passim*

*United States v. Tullos*, 356 F. App'x 727 (5th Cir. 2009)............................... 37, 38

*United States v. Wilkes*, 732 F.2d 1154 (3d Cir. 1984) ..........................................38

*Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989 (2016).................41

*Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169 (9th Cir. 2001)..............39

## FEDERAL STATUTES AND RULES

18 U.S.C. § 912................................................................................. *passim*

18 U.S.C. § 1001 ............................................................................. 44, 45

18 U.S.C. § 1546(a) ..............................................................................45

18 U.S.C. § 1621 ...................................................................................45

18 U.S.C. § 3231 .....................................................................................2

18 U.S.C. § 3742(a) ................................................................2

28 U.S.C. § 1291 ...................................................................2

47 U.S.C. § 223(a)(1)(C) .......................................................3

Fed. R. App. P. 4(b) ..............................................................2

Fed. R. Evid. 404(b)..............................................................24

## BRIEFS

Government's Answering Brief, *United States v. Hanover*, No. 12-50023,
2012 WL 5493229 (9th Cir. Nov. 5, 2012)................................... 20, 21

## OTHER AUTHORITIES

*Black's Law Dictionary* 718 (10th ed. 2014)................................... 33, 34

Model Crim. Jury Instr. 9th Cir. 8.50 (2010)................................... *passim*

2 Fed. Jury Prac. & Instr. § 38:03 (6th ed. 2015) ....................................38

26 R. Lord, Williston on Contracts § 69:12 (4th ed. 2003)....................................41

35 C.J.S. *False Personation* § 1 (2016)....................................36

No. 16-10010

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

        v.

DOUGLAS STORMS YORK,

     Defendant-Appellant.

_____

**BRIEF FOR THE UNITED STATES AS APPELLEE**

Douglas York, a convicted domestic abuser, engaged in an extended campaign of harassment toward his estranged wife and her new boyfriend. The harassment for which York was charged and convicted here involved a voicemail York left for the boyfriend. Using a digital "spoofing" application that York paid for and set up to disguise his voice and his telephone number, York impersonated a female IRS employee, "Judy Smith." In the voicemail, York claimed to be investigating the boyfriend as part of a tax audit, and asked that the boyfriend return York's call at a fake phone number that York had created with the spoofing application to resemble an IRS phone number. The evidence at trial proved that York's conduct violated the first clause of 18 U.S.C. § 912, which this Court has held has two elements: (1) falsely pretending to be a federal official and (2) acting

as such.  York argues that the evidence was insufficient to support his conviction, and that the district court erred by declining to depart from this Court's model jury instruction concerning the elements of Section 912.  York claims—contrary to this Court's interpretation of the statute and its plain language—that the statute includes additional elements of "intent to deceive" and "materiality," and that the district court committed reversible error by failing to instruct the jury on those supposed elements.  Each of York's arguments is meritless, and this Court should affirm his conviction and sentence.

## JURISDICTION, TIMELINESS, AND BAIL STATUS

The district court (Hon. Edward J. Davila) had subject matter jurisdiction pursuant to 18 U.S.C. § 3231.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  On January 4, 2016, the district court sentenced York to 12 months and one day in prison and one year of supervised release. Excerpts of Record ("ER") 11-12.  York filed a timely notice of appeal on January 7, 2016.  ER 9; *see* Fed. R. App. P. 4(b).

York is in custody with an estimated release date of October 10, 2016. https://www.bop.gov/inmateloc.

2

## ISSUES PRESENTED

1.      Whether the evidence was sufficient to convict York of impersonating a federal employee in violation of 18 U.S.C. § 912.

2.      Whether the district court erred in instructing the jury on the elements of 18 U.S.C. § 912.

3.      If the district court committed instructional error, whether that error was harmless.

## STATEMENT OF THE CASE

In 2015, a grand jury returned an indictment charging Douglas York with one count of impersonating a federal officer or employee, in violation of 18 U.S.C. § 912.  ER 355-59.  The month before trial, the government obtained a superseding indictment that added a second count: telecommunications device harassment, in violation of 47 U.S.C. § 223(a)(1)(C).  ER 351-54.

York appeals from his conviction following a two-day trial at which a jury found him guilty of the first count, impersonating an IRS employee, in violation of 18 U.S.C. § 912.  The government called three witnesses at trial: Allan Hessenflow, the boyfriend of York's ex-wife (ER 34-71); Nathan Cooper, the custodian of records for Spoofcard, the telephone "spoofing" application that York used to phone Hessenflow while impersonating an IRS employee (ER 170-99); and Special Agent Donna Aguirre of the Treasury Inspector General for Tax

Administration (ER 200-36). The defense called no witnesses and presented no evidence. ER 239. After the district court denied York's motion for judgment of acquittal, ER 244, the jury returned a guilty verdict, ER 280-83.

### A. Offense Conduct

In 2011 and 2012, Douglas York and his wife, Andrea, were in the process of separating. ER 35; AOB 6. Andrea started dating her longtime friend Allan Hessenflow. ER 35-36, 67. York began harassing Hessenflow. By February 2012, York was calling Hessenflow throughout the day and night, on both Hessenflow's home phone and his cell phone. ER 37, 65-66. In these "harassing calls," ER 66, York asked Hessenflow for his address, ER 36-37, and "tr[ied] to locate" and made "attempts to communicate with" Andrea, ER 66, 70. York also sent Hessenflow text messages. ER 37.

In February 2012, York posted an advertisement on Craigslist offering Hessenflow's Porsche convertible for sale for $1. ER 46-47, 217-20, 332. In the posting, York offered to sell Hessenflow's car as part of a "[d]ivorce payout"; wrote that a buyer "might as well get [the car] before the ex gets it"; included Hessenflow's home address; and announced, "Come and get it!" ER 47, 217-20, 332. Prospective buyers responded to the Craigslist posting by showing up at Hessenflow's house. ER 47.

Because of York's "aggressive" behavior, Hessenflow logged his contacts with York on a computer spreadsheet. ER 48-49, 202, 204-05. In his log, Hessenflow tracked every interaction he had with York, including phone calls, text messages, sightings, and personal interactions. ER 205.

On February 23, 2012, York made ten phone calls to Hessenflow, with the first call at 12:28 a.m. and the last call at 5:29 p.m. ER 64-65, 207-08, 309-11. Hessenflow did not answer the calls, but recognized the number on his caller ID as York's cell phone. ER 37, 61. In addition to those ten calls, Hessenflow received a call and voicemail on the same date from a phone number he did not recognize: 708-565-1040. ER 39-40. In that voicemail, the caller, speaking in a woman's voice, said:

> Hello, Allan. My name is [Judy] Smith.[1] I'm with the IRS, Internal Revenue Service, and I'm calling you [garbled] tax audit some information [garbled] and would like to check your records for the following years[:] 2005, 2006, 2007, and if you could please return my call at the number listed on your caller ID that would be appreciated. And, once again, if we cannot reach you, we will definitely be checking into your past, and I'll be looking into your records. Thanks a lot and we'll call you back tomorrow.

---

[1] As York correctly notes, AOB 7 n.3, Hessenflow transcribed the caller's first name as "Gigi Smith," ER 51, but it seems more likely that York used the name "Judy Smith," ER 203.

5

ER 51, 77. Hessenflow made a recording of the message using a handheld digital recorder, then transferred the recording to his computer. ER 52.

The last four digits of the phone number were significant to Hessenflow because 1040 is also the code for the "standard federal individual income tax return." ER 40. Additionally, as the case agent testified, 1040 is the last four digits of an IRS hotline number that members of the public can call regarding their tax records. ER 221.

Because Hessenflow did not recognize the phone number that appeared on his caller ID for this voicemail, he Googled it but found no information online. ER 40. The voicemail made Hessenflow "suspicious," ER 69, although Hessenflow did not know at this point whether he was in fact "under investigation or audit by the [IRS]," ER 40. When his Google search revealed no information about the phone number on his caller ID, Hessenflow became "fairly certain" the voicemail was not from an IRS office. ER 40. He then "searched online for who to report the impersonation to" and found contact information for the Treasury Inspector General Tax Administration ("TIGTA"). ER 40-41.

The day after receiving the voicemail, Hessenflow emailed TIGTA to report that he had received a message from someone "claiming to be from the IRS" and that he had made a recording of the message. ER 41, 331. Hessenflow also informed TIGTA of the phone number that appeared on his caller ID, stated that he

6

"believe[d] the number was spoofed," and said he "believe[d]" he knew who was "behind it, Doug York of Morgan Hill, California, as this follows a general pattern of harassment from him." ER 41, 331. In the email, Hessenflow included his transcription of the voicemail. ER 331.

At the time Hessenflow emailed TIGTA, he did not yet know that the call had come from York, but Hessenflow suspected York was behind it "[b]ecause it followed the same pattern of harassment" York had been engaged in around that time. ER 49. Hessenflow's basis for suspecting the phone number on his caller ID was "spoofed" was that he had previously been the victim of an unrelated act of identity theft, and from that experience had learned about "spoofing." ER 52.

Following Hessenflow's email, TIGTA opened an investigation, which eventually revealed that York had used an application called Spoofcard[2] to make the "IRS" phone call to Hessenflow. ER 183-84, 190, 202-12, 310. Records subpoenaed from Spoofcard established that York set up a Spoofcard account with his credit card. ER 185-88, 192-93, 296. The IP address associated with York's Spoofcard account matched the IP address associated with the Craigslist post in

---

[2] Spoofcard is a paid service that allows its customers to make "spoofed" phone calls. ER 171-72, 210. Specifically, the Spoofcard application allows a user to create a fake phone number to appear on the caller ID systems of other people; to disguise the user's voice and make it sound like either a man's or woman's voice (an optional feature); to add fake background noise to calls; to send calls directly to voicemail; and to make digital audio recordings of spoofed calls. ER 171-80.

which York offered to sell Hessenflow's Porsche for $1. ER 216-20, 297, 332. The subpoenaed Spoofcard records, along with records from York's cell phone provider, established that York called Hessenflow from York's cell phone using Spoofcard. ER 61-62, 183-84, 189-93, 205-11, 291, 310. With Spoofcard, York was able to create a fake phone number ending in "1040" and make that number appear on Hessenflow's caller ID. ER 39-40, 190, 221, 294. In addition, York used Spoofcard's optional voice-changer feature to disguise his voice and make himself sound like a woman. ER 181-82, 191, 294. York also selected Spoofcard's optional recording feature and made an MP3 recording of his call to Hessenflow. ER 184, 191, 211-12, 294.[3]

In March 2012, roughly a month after York left the "IRS" voicemail for Hessenflow, York posted a message on Facebook in which he told his Facebook friends that his "exwifes dude" (Hessenflow) "[t]ook my girls up to his place," where York suggested they might be in danger. ER 54, 333. York included Hessenflow's home address in the Facebook post. ER 54-55, 333.

---

[3] After the district court precluded Spoofcard's custodian of records from testifying about the interstate-nexus element of count two of the superseding indictment (telecommunications device harassment) due to the witness's lack of "percipient knowledge" on that element, the government moved to dismiss count two. ER 168, 238.

## B.     Sentencing

Before the sentencing hearing, the parties submitted sentencing memoranda. SER 25-28, 29-34.  York argued that his conviction resulted from "a prank phone call," which, although "in poor taste" and reflecting "a lack of judgment," showed no fraudulent intent and served "only to annoy" Hessenflow, "who jumped at the opportunity to report his girlfriend's antagonistic husband to federal authorities." SER 29-30.  York requested a noncustodial sentence.  SER 30, 34.

The court held a sentencing hearing on January 4, 2016.  SER 1-24; Clerk's Record ("CR") 96.  The defense conceded that York's conduct "is at the low end of what is encompassed by the statute," and York, through counsel, "acknowledge[d] that this is a pattern of conduct that he engaged in during this time that was harmful to both Andrea York and to Mr. Hessenflow."  SER 10.[4] Defense counsel also recognized that York's 21 criminal history points include "domestic violence incidents which I understand to be troubling."  SER 12.[5]

---

[4]   After Andrea initiated divorce proceedings against York, he began "stalking" her.  Presentence Investigative Report ("PSR") PSR ¶ 9.  (Filed under seal in accordance with Interim Circuit Rule 27-13.)  Andrea hid from York and "moved several times," but York always "managed to track her down."  PSR ¶ 12.  York would call her frequently, using alternate phone numbers "in order to get her to answer the phone."  *Id.*  Andrea obtained a restraining order.  PSR ¶ 9; ER 228-29. Additionally, in May 2012, York posted signs around Hessenflow's house and street falsely indicating that Hessenflow was a child predator.  PSR ¶ 9.

[5]   York has seven prior convictions related to domestic violence.  *See* PSR Sent'g Rec. 2.  He has been convicted of abusing Andrea, his ex-wife—most recently in

Defense counsel nevertheless reiterated York's view that the offense conduct here was a "prank call." SER 14. The district court disagreed with that characterization, noting that the use of the Spoofcard application "expresses a certain level of sophistication to pursue that as opposed to the age old method of putting a towel over the phone and cracking your voice." SER 15. Using a credit card and opening a Spoofcard account "to fool someone" demonstrates "a certain level of sophistication . . . or consciousness of guilt of using someone's voice as opposed to your own." SER 15. The court also noted that York has used 21 aliases in the past. SER 13.

After York made a brief statement, SER 17, the court imposed its sentence. The court found that York's offense conduct "was more serious" than a prank call because it "impacted individuals in a more serious way than that type of call." SER 18. The court emphasized that "it is a serious thing when one represents a government official in some capacity," and "[t]he jury found that. The jury heard the evidence. They heard from the victim." SER 18. The court "agree[d] with the jury's verdict." SER 21. Adopting the PSR's recommendations, the court imposed a Guidelines sentence of 12 months and one day in custody, to followed by one year of supervised release. SER 20-21; ER 10-15.

---

2012, after the offense conduct in this case—as well as two other women. PSR ¶¶ 41, 47, 49, 54-55. In 2015, while on release pending sentencing in this case, York was arrested for abusing a fourth woman. PSR ¶ 63; CR 84.

10

## SUMMARY OF ARGUMENT

The district court correctly instructed the jury as to the elements of 18 U.S.C. § 912, and the evidence at trial amply supported the jury's guilty verdict. "Intent to deceive" is not a separate element of Section 912, and the statute does not require "materiality." As this Court has held, the statute has two elements: (1) the defendant falsely pretended to be a federal officer or employee, and (2) the defendant acted as such. Additionally, even if the district court committed instructional error—which it did not—any error was harmless given the weight of the extensive evidence presented by the government and York's failure to put on a case. This Court should affirm.

## ARGUMENT

## I.   THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S GUILTY VERDICT

### A.   Standard Of Review

In reviewing a sufficiency challenge, this Court is "obliged to construe the evidence 'in the light most favorable to the prosecution,' and only then determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

**B.    Argument**

There are two ways to violate 18 U.S.C. § 912, a law that "states two

separate and distinct offenses."  *United States v. Aguilar*, 756 F.2d 1418, 1420 (9th

Cir. 1985); *see also United States v. Tomsha-Miguel*, 766 F.3d 1041, 1045 (9th Cir.

2014).  The statute provides:

> Whoever [1] falsely assumes or pretends to be an officer
> or employee acting under the authority of the United
> States or any department, agency or officer thereof, and
> acts as such, or [2] in such pretended character demands
> or obtains any money, paper, document, or thing of
> value, shall be find under this title or imprisoned not
> more than three years, or both.

18 U.S.C. § 912; *see United States v. Bushrod*, 763 F.2d 1051, 1053 (9th Cir.

1985)).  Here, the superseding indictment charged York with violating Section

912[1].  ER 352.

Section 912[1] "has two elements: the impersonation of an officer or

employee and acting 'as such.'"  *Tomsha-Miguel*, 766 F.3d at 1045.  Likewise, this

Court's Model Criminal Jury Instruction 8.50—which *Tomsha-Miguel* cited, 766

F.3d at 1045, and which the district court used in this case, ER 122, 276—

describes Section 912[1] as containing two elements:

> First, the defendant falsely pretended to be an [officer]
> [employee] acting under the authority of [the IRS]; and
>
> Second, the defendant [acted as such.]

*See* 9th Cir. Model Crim. Jury Instruction 8.50 (SER 41).[6]

False personation, the first element of Section 912[1], "occurs when any person 'assume[s] to act in the pretended character' of a government official. 'The most general allegation of impersonation of a government official' is sufficient under § 912." *Tomsha-Miguel*, 766 F.3d at 1045-46 (quoting *United States v. Lepowitch*, 318 U.S. 702, 704 (1943)).

As to the second element—that the defendant, having assumed the character of an IRS agent, "act[ed] as such"—courts "have generally agreed that § 912 requires only that the government show any overt act consistent with the assumed character." *Tomsha-Miguel*, 766 F.3d at 1046 (internal quotation marks omitted); *see also United States v. Rippee*, 961 F.2d 677, 678 (7th Cir. 1992) (Section 912[1] criminalizes "false impersonation of a federal official coupled with an overt act in conformity with the pretense"); *United States v. Rosser*, 528 F.2d 652, 656 (D.C. Cir. 1976) ("acts as such" means "performing an overt act that asserts, implicitly or explicitly, authority that the impersonator claims to have by virtue of the office he pretends to hold"). This Court has held that "[a]lthough a defendant must engage in actions that go beyond mere bravado," the government satisfies the "acts as such" element if it shows that the defendant committed an overt act that was "in

---

[6] *Available at* http://www3.ce9.uscourts.gov/jury-instructions/node/508 (last visited July 22, 2016).

13

keeping with [his] assumed character." *Tomsha-Miguel*, 766 F.3d at 1046 (internal

quotation marks omitted). Put another way, evidence satisfies the "acts as such"

element if a reasonable jury could conclude that a defendant's "actions were

'consistent with the assumed character' of a government official, and in furtherance

of the impersonation." *Id.*; *see also United States v. Hamilton*, 276 F.2d 96, 98

(7th Cir. 1960) (defendant who impersonated an FBI agent acted "as such" by

carrying firearms, "an act in keeping with his pretended character").

Here, the evidence at trial readily satisfied both elements of Section 912[1]:

that York falsely pretended to be an IRS agent and acted "as such." As the district

court recognized in denying York's Rule 29 motion, the jury heard "extensive

evidence" in this case. ER 244. York appears to concede that the evidence

sufficed as to the first element, although he disputes whether it satisfied the second.

*See* AOB 28 (arguing only that "there was insufficient evidence that when Mr.

York falsely identified himself as an IRS employee, he 'acted as such'"). But the

trial evidence more than sufficed to establish both elements of Section 912[1].

### 1. *York falsely pretended to be an IRS employee*

As to the first element, the evidence at trial proved that York made the

February 23 call to Hessenflow on York's cell phone using his Spoofcard account,

and that York left the "IRS" voicemail for Hessenflow. ER 190, 202-12, 310.

These facts are undisputed. Furthermore, York does not dispute the content of the

February 23 voicemail—only how to interpret it.  In the voicemail, York claimed

to be "Judy Smith," who was "with the IRS, Internal Revenue Service," and who

needed to check Hessenflow's tax records for specific years in connection with a

"tax audit."  ER 51, 77.  Before making this call, it is undisputed that York went to

the trouble of setting up an account with the Spoofcard application and paying for

it with his credit card.  ER 186-90, 192-93, 291-97.  Neither York nor his false

persona works for the IRS.  ER 203, 216.

  Moreover, when York called Hessenflow's phone on February 23, 2012,

York elected to use several of Spoofcard's different features.  Spoofcard allowed

him to "manually select[]" a fake phone number that would "be displayed on"

Hessenflow's caller ID.  ER 180-81; *see also* ER 183, 291.  In addition, to disguise

his voice, York chose to use Spoofcard's optional "voice changer" feature, and

selected the "female voice" option, ER 191, which "heightens the pitch of your

normal voice and raises the frequency to make it sound more feminine," ER 181.

Users of Spoofcard need not select the voice changer feature to use Spoofcard;

they "can choose to bypass that option," in which case their voices remain normal

on calls.  ER 181-82.  York also elected to use Spoofcard's recording option to

record and save an audio file of the February 23 "IRS" call.  ER 183-84, 291.

  In light of the facts presented at York's trial, "a jury could reasonably

conclude that [York's] actions constituted an effort to 'assume to act in the

pretended character' and amounted to impersonation of a federal officer or employee." *Tomsha-Miguel*, 766 F.3d at 1046.  The evidence at trial was therefore sufficient to satisfy Section 912[1]'s first element.

### 2. York acted "as such"

As to the second statutory element of Section 912[1], acting "as such," the jury heard evidence that York not only claimed to be IRS employee "Judy Smith," but also claimed to be calling regarding a "tax audit" and in order "to check your records" for the years "2005, 2006, 2007."  ER 51, 77.  And York asked Hessenflow to "please return my call at the number listed on your caller ID," warning Hessenflow that "if we cannot reach you, we will definitely be checking into your past, and I'll be looking into your records."  ER 51, 77.  York also promised Hessenflow that he would "call you back tomorrow."  ER 51, 77.

In addition, as noted above, the phone number York selected to appear on Hessenflow's caller ID was 708-565-1040.  ER 190, 291.  Special Agent Aguirre testified about the significance of the last four digits of that spoofed phone number. "The 1040 really stood out" to Special Agent Aguirre because 1040 is the IRS "tax form for individual income filers, but it's also the last four digits of the legitimate" IRS hotline phone number.  ER 221; *see also* ER 39-40 (Hessenflow remembered the last four digits of the spoofed phone number, which were significant to him

because "1040" is also an IRS tax form). The public can call the IRS hotline phone number to get help with their taxes. ER 221.

The jury also heard testimony that York's actions were consistent with those of a bona fide IRS employee. Special Agent Aguirre testified about the job functions of IRS employees, with whom she interacts "pretty much on a daily basis." ER 215. As part of her job as a special agent, she testified that she needs to "understand the different business functions and positions within" the IRS. ER 215. Special Agent Aguirre testified that a person employed by the IRS would request a tax return during a legitimate investigation, and could do so over the phone. ER 216. She also testified that it would be consistent for someone legitimately employed by the IRS to investigate tax records. ER 216.

On cross examination, Special Agent Aguirre reiterated that the IRS sometimes calls people about tax issues. ER 234. She also testified that she has investigated a number of fraudulent personations of IRS employees, including cases where scammers try to obtain money from people, and that sometimes such scammers use fake phone numbers. ER 234-35. Defense counsel disputed whether the February 23 voicemail "is consistent with any of the scam investigations that you've done and those extortion schemes," but Special Agent Aguirre testified that, while not exactly the same, York's offense fell within the realm of scams she had investigated. ER 235.

17

The evidence at trial satisfied the second element of Section 912[1]. Based on that evidence, "a reasonable jury could conclude that [York's] actions were 'consistent with the assumed character' of a government official, and in furtherance of the impersonation," and that York acted "in order to effectuate the impersonation and convince" Hessenflow that he was being investigated by the IRS. *See Tomsha-Miguel*, 766 F.3d at 1046.

A reasonable jury could also find, based on the evidence here, that York sought to cause his victim "to follow some course he would not have pursued but for the deceitful conduct." *Lepowitch*, 318 U.S. at 704 (interpreting Section 912's predecessor statute). Indeed, by amending Section 912 to its present form, Congress "concluded that virtually everyone who pretends to be an officer or employee of the United States and in some manner asserts authority by acting 'as such' seeks 'to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct.'" *United States v. Rosser*, 528 F.2d 652, 656 (D.C. Cir. 1976) (quoting *Lepowitch*, 318 U.S. at 704).

York argues that there was no evidence presented to the jury that York "actually sought to induce Mr. Hessenflow to act in response to his 'assertion of authority.'" AOB 29-30 (quoting *United States v. Robbins*, 613 F.2d 688, 691 (8th Cir. 1979)). But that argument, based on an out-of-circuit case, misses the mark.

18

This Court does not require evidence that a defendant "actually sought" to get a misrepresentee to act in response to his "assertion of authority"; rather, under the "acts as such" element of Section 912[1], this Court asks whether the defendant committed an overt act "consistent with the assumed character of a government official, and in furtherance of the impersonation." *Tomsha-Miguel*, 766 F.3d at 1046 (internal quotation marks omitted).

Furthermore, even under the Eighth Circuit's heightened standard—which does not apply here—there would have been sufficient evidence here for a rational jury to find that York sought to induce Hessenflow to act in response to York's assertion of authority. A rational jury could conclude, for example, that York sought to get Hessenflow to believe he was being investigated by the IRS, to gather his tax records from 2005, 2006, and 2007 in response to the IRS inquiry, to attempt to return York's call, to attempt to contact an IRS office and find out whether the call was legitimate, or simply to worry about whether he might be under IRS investigation. That the fake phone number York created was nonfunctional is immaterial, particularly if York's goal was to cause Hessenflow anxiety or stress.[7]

---

[7] If York's goal was to cause Hessenflow anxiety or stress, then York achieved that goal through the period—however brief—that Hessenflow wondered if the voice of "Judy Smith" in the voicemail actually belonged to an IRS agent, and through the period that Hessenflow spent reporting the matter to TIGTA, followed by the accompanying investigation and prosecution. As York's counsel

This Court rejected a sufficiency challenge similar to York's in *United States v. Hanover*, 522 F. App'x 420 (9th Cir. 2013) (unpublished). Hanover, the defendant, used the same Spoofcard application as York. *See* United States' Answering Br., *United States v. Hanover*, CA No. 12-50023, 2012 WL 5493229, at *6-*13 (9th Cir. Nov. 5, 2012). In some of her calls, Hanover used Spoofcard to make it appear that she was calling from FBI offices. *Id.* at *10-*13. And Hanover, like York, called people using Spoofcard's voice-altering feature, speaking in a man's voice that one of her targets recognized as "obviously" faked. *Id.* at *7-*8. In another call, Hanover identified herself as "a federal agent" who was "doing an investigation on Karen Hanover" (the defendant herself). *Id.* at *11-*13. The "agent" did not speak in a professional manner, referring to the woman on the other end of the call as "a fucking nut job," threatening to "throw your butt in jail" if she did not answer Hanover's questions, and telling the woman to "watch your back." *Id.* at *12. When the woman contacted the FBI to report the abusive call, she was assured that "no agent would talk to you like this." *Id.* at *13.

The trial court in *Hanover* instructed the jury on the elements of Section 912[1] using Model Criminal Jury Instruction 8.50. *See* 2012 WL 5493229, at *17-*18. Hanover argued in the district court that the instruction was defective

---

acknowledged at sentencing, York's actions were part of a "pattern of conduct" that was "harmful to" Hessenflow. SER 10.

and that it should be supplemented to inform the jury that the statute requires "something more than an act in keeping with the falsely assumed character." *Id.* at *18. The district court rejected Hanover's requested modification to the instruction, and found that "bullying and/or threatening individuals who engaged in behavior that might be adverse to her interests" and attempting to gather information as an FBI agent would be sufficient to satisfy the "acts as such" element of Section 912[1]. 2012 WL 5493229, at *20.

Hanover was convicted of impersonating a federal officer. *Hanover*, 522 F. App'x at 422. On appeal, she challenged (among other things) the sufficiency of the evidence under the "acts as such" element of Section 912[1]. *Hanover*, 522 F. App'x at 422. She argued that "while the evidence may have been sufficient to demonstrate she claimed to be an FBI agent, it is insufficient to demonstrate that she subsequently acted like one." *Id.* This Court rejected Hanover's sufficiency argument in a short, unpublished opinion, holding that the evidence "demonstrated that Hanover not only told the victim that she was an FBI agent, but also elicited information from the victim in that capacity—information the victim would never have provided, but for Hanover's ruse." *Id.* The defendant also "threatened to have the victim jailed," and this Court noted that "[t]he credibility of such a threat is at least enhanced by, if not dependent upon, the predicate that the person making

21

the threat is a federal agent." *Id.* Just as the evidence was sufficient in *Hanover*, it is sufficient here.

In another case with several similarities to this one, *United States v. Parker*, 699 F.2d 177 (4th Cir. 1983), the Fourth Circuit held that a defendant's impersonation of an IRS employee "amounted to an assertion of false authority over" his target, "despite the apparent absence of fraudulent intent," because the defendant "first represented that he was an agent of the Internal Revenue Service" and "then asserted he was investigating a report that [the victim] was not paying taxes on the sale of firewood," which "went beyond nonculpable false pretense." *Id.* at 179. The *Parker* court held that "[b]y demonstrating that Parker asserted the authority to investigate [the victim's] tax status, the government has met its burden of proof" under the "acts as such" prong of Section 912[1]. *Id.* at 180; *cf. Heskett v. United States*, 58 F.2d 897, 902 (9th Cir. 1932) (by inquiring about passports as part of a fraud scheme, defendants pretended to be federal immigration officers).

Likewise, in *Tomsha-Miguel*, 766 F.3d at 1045-1046, this Court held that the evidence at trial satisfied both elements of Section 912[1] because it showed that the defendant, who worked as a bookkeeper and tax preparer, had falsely assumed the role of a "fictional congressional aide" by preparing a phony letter addressed to the defendant herself ("Dear Ms. Tomsha-Miguel"); signing the letter on behalf of the fictional congressional aide; copying the official letterhead of a Congressman

22

onto the phony letter; and then faxing the letter to the defendant's tax client "to effectuate the impersonation and convince [her client] that the Congressman's office was seeking to resolve his tax dispute with the IRS."

Tomsha-Miguel's actions satisfied the first prong of Section 912[1] because "a jury could reasonably conclude" that they "constituted an effort to 'assume to act in the pretended character' and amounted to impersonation of a federal officer or employee." *Tomsha-Miguel*, 766 F.3d at 1046. And the evidence satisfied the second prong—acting "as such"—because "a reasonable jury could conclude that Tomsha-Miguel's actions were 'consistent with the assumed character' of a government official, and in furtherance of the impersonation, when she transmitted the fraudulent letter to Garcia." *Id.*

The same holds true here: York acted "as such" by acting in a manner consistent with his assumed IRS character, and in furtherance of the impersonation, when he "transmitted" his impersonation to Hessenflow by using Spoofcard; leaving Hessenflow a deceptive voicemail; suggesting that the IRS was investigating Hessenflow as part of a tax audit; claiming that the IRS needed to check Hessenflow's tax records for specific years; and asking Hessenflow to call York back at a spoofed phone number.

In sum, because there was sufficient evidence at trial to permit a rational juror to find beyond a reasonable doubt that York falsely assumed or pretended to

23

be an IRS employee and that he acted as such, the district court did not err in denying York's motion for judgment of acquittal. York's conviction should be affirmed.

## II. THE DISTRICT COURT CORRECTLY INSTRUCTED THE JURY ON THE ELEMENTS OF SECTION 912

### A. Standard Of Review

"When a party properly objects to a jury instruction," this Court reviews de novo "whether the instructions given accurately describe the elements of the charged crime." *United States v. Garcia*, 729 F.3d 1171, 1175 (9th Cir. 2013) (internal quotation marks and brackets omitted).

### B. Procedural Background

In the district court, including during trial, York shifted his interpretation of Section 912[1] several times, and took positions concerning the statute's elements that contradict his position on appeal.

Originally, York argued that the statute has "two elements"—the same as those listed in Model Criminal Jury Instruction 8.50—and that "intent" is not "an element of the offense." SER 38-39. York made these arguments before trial, in opposing a government motion in limine to admit "other acts" evidence under Rule 404(b). York argued that the issues of "intent, knowledge, and absence of mistake or accident" are "plainly irrelevant here." SER 38. He continued: "Neither intent nor knowledge is an element of the offense, and a claim of mistake or accident is

not a defense." SER 38. York went on to argue that "[t]o obtain a conviction under § 912, the government must prove two elements: (1) that Mr. York falsely pretended to be an IRS employee; and (2) that he acted as such." SER 39.

When proposing jury instructions, York adopted a new understanding of Section 912[1]. While the government argued that the court should deliver Model Criminal Jury Instruction 8.50, which contains two elements, York urged the court to supplement that model instruction's elements with a "third element"—an "intent to defraud." SER 36. He explained his proposal this way:

> Mr. York requests the third element to preserve his right to appeal *due to a Circuit split on the issue of intent to defraud. See United States v. Tomsha-Miguel*, 766 F.3d 1041,1050 (9th Cir. 2014) (holding there is no requirement for government to establish intent to defraud under 18 U.S.C. sec. 912, but noting Circuit split on the issue).

SER 36 (footnote) (emphasis added).

At a conference after the first day of trial, *see* ER 78-104, York's counsel informed the court that the defense was drafting a new proposed jury instruction because the second element of Section 912 ("acts as such") "has given our office trouble in terms of trying to determine it." ER 86. Counsel continued that "what we've been struggling with is how to best stress to the jury that [Section 912] does require, from our perspective, fraudulent intent and the circuit split that is referenced in our original draft jury instruction [SER 36] is one where several of

25

the circuits have said that it absolutely requires a separate fraudulent intent." ER 88-89. York's counsel acknowledged that "[t]he Ninth Circuit has gone very clearly in the other direction," but he asserted that Section 912 "still requires that there be some fraud." ER 89. The court deferred ruling on the issue until the next day. ER 89-90.

The next day, the court and the parties again discussed the disputed jury instruction. The defense filed a revised proposed jury instruction as to the elements of Section 912 (ER 334-36) as well as a memorandum in support (ER 337-50). ER 108. York's counsel explained to the court that the defense was still "sorting out the statutory language" but that the "defense's concern here is that" Section 912 "is not intended to be a strict liability crime and from the Ninth Circuit Model Instruction [8.50] there's not really any guidance from the jury as to what the mens rea is and so that's the purpose of our filings as to the materiality, the intent to deceive, et cetera." ER 108.

Defense counsel argued that York's revised proposed jury instruction was not "in conflict with Ninth Circuit law." ER 109. Defense counsel cited *Tomsha-Miguel*, a case that he asserted "did not actually address jury instructions," ER 109, and did not inform the court that *Tomsha-Miguel* cited Model Criminal Jury Instruction 8.50. Defense counsel also did not inform the court that *Tomsha-Miguel* held that Section 912[1] "has two elements," 766 F.3d at 1045—the same

26

two elements listed in the model instruction. Instead, defense counsel argued that the model instruction is deficient and that "without instruction to the jury as to the intent required," Section 912 would become a "strict liability" offense. ER 109-11. The defense proposed a hybrid of the Eleventh and Eighth Circuits' model instructions. ER 110, 122.

The government responded that Section 912 does not include a separate essential element of intent, but rather that the "intent requirement is inherently included" in the state's two elements as reflected in the model instruction, that the model instruction is consistent with this Court's caselaw, including *Tomsha-Miguel*, and that the model instruction has never been overturned. ER 111-13.

Defense counsel replied that "*Tomsha-Miguel* was wrongly decided as to the fraud" issue, but he acknowledged that the district court "would be foreclosed from giving an instruction that included defraud." ER 113. However, counsel asserted that an "intent to deceive" instruction would be appropriate. ER 113-14. He continued: "There is this ugly circuit split about the defraud, but in the Ninth Circuit even holding that defraud doesn't need to be listed as an element, there has to be some implication to the jury that there has to be a deceptive purpose to the communication." ER 114. The government, echoing *Tomsha-Miguel*, replied that the intent element is "incorporated" into the "clearly established" elements of Section 912, and is "taken into account in these two elements." ER 114-15.

27

After further discussion, ER 115-22, defense counsel acknowledged that York's proposed instruction "conflicts with" this Court's Model Criminal Jury Instruction 8.50, but argued that the model instruction did not "comport with" *Tomsha-Miguel*. ER 122. Defense counsel urged the court to instruct the jury using a hybrid of the Eighth and Eleventh Circuits' model instructions "in concert." ER 122. The court declined, ruling that it would instruct the jury in "fidelity to the Ninth Circuit model" (Model Criminal Jury Instruction 8.50), which "provide[s] sufficient guidance to the jury." ER 122; *see also* ER 124, 276.

### C. "Intent to Deceive" Is Not A Separate Element Of Section 912, But Is Incorporated Into The Two Elements Recognized By This Court

Congress enacted the false personation statute now codified at 18 U.S.C. § 912 with the purpose of maintaining "the general good repute and dignity" of the government. *Lepowitch*, 318 U.S. at 704 (quoting *United States v. Barnow*, 239 U.S. 74, 80 (1915)). As the Supreme Court recognized more than a century ago in interpreting Section 912's predecessor statute, "the mischief to be cured" by the statute is the "false pretense of Federal authority." *Barnow*, 239 U.S. at 78. That predecessor statute included an "intent to defraud" element. *Tomsha-Miguel*, 766 F.3d at 1050. But in 1948, "the statute was recodified and amended to its present form, which does not include any reference to an 'intent to defraud.'" *Id.*

In light of the 1948 revision and recodification, this Court has held that "an intent to defraud is not a separate element of 18 U.S.C. § 912" and that the affirmative defense of lack of intent to defraud therefore "is 'irrelevant because it does not negate any of the elements of [Section] 912.'" *Tomsha-Miguel*, 766 F.3d at 1050 (quoting *Bushrod*, 763 F.2d at 1053). Additionally, after the 1948 changes, an indictment under Section 912 "is no longer required to allege an intent to defraud, as reiteration of the elements of [Section] 912 is sufficient to fully inform the defendant of the crime of which he was charged." *Tomsha-Miguel*, 766 F.3d at 1050 (citing *United States v. Mitman*, 459 F.2d 451, 453 (9th Cir. 1972)).

As this Court held in *Tomsha-Miguel*, Section 912[1] "has two elements: the impersonation of an officer or employee and acting 'as such.'" 766 F.3d at 1045; *see also Hanover*, 522 F. App'x at 422. This Court's Model Criminal Jury Instruction 8.50—which this Court cited in *Tomsha-Miguel*, 766 F.3d at 1045— lists the same two elements.

Here, faithful to this Court's precedent, the district court correctly instructed the jury that for York "to be found guilty" under Section 912[1], "the government must prove each of the following elements beyond a reasonable doubt[:] First, that the defendant falsely pretended to be an officer or employee acting under the authority of the United States Internal Revenue Service; and, second, the defendant acted as such." ER 276; *see also* CR 74 (at 12). The court instructed the jury

29

accurately, and its decision to rely on this Court's Model Criminal Jury Instruction 8.50 was entirely appropriate.

York argues that the district court committed reversible error by using Model Criminal Jury Instruction 8.50 rather than his proposed instruction. AOB 12, 21; ER 110, 122. According to York, the district court was required to instruct the jury on a third purported element, "intent to deceive," and its failure to give York's proposed instruction was reversible error "and a violation of due process." AOB 21-24.[8] York's argument fails for three reasons.

### 1. This Court has already held that Section 912[1] "has two elements" and has endorsed the model jury instruction used here

This Court has never cast doubt on Model Criminal Jury Instruction 8.50. To the contrary, in *Tomsha-Miguel*, 766 F.3d at 1045, this Court cited that model instruction, and immediately thereafter reaffirmed it by holding that Section 912[1] "has two elements: the impersonation of an officer or employee and acting 'as such'"—the same elements listed in the model instruction. Thus, York's central argument on appeal rests on a false premise: that *Tomsha-Miguel* conflicts with the model instruction. It does not.

---

[8] As discussed below, York also argues that the district court erred by not instructing the jury on a fourth purported element, "materiality." AOB 26-28.

Strikingly, York does not address the "two elements" holding of *Tomsha-Miguel* anywhere in his opening brief, despite extensively citing and quoting other parts of the opinion. *E.g.*, AOB 3, 16, 18, 19-21, 23. York goes so far as to argue that "[i]t makes no difference that the district court's instruction" to the jury here "closely tracked the Ninth Circuit model instruction." AOB 24. Similarly, he asserts that "[w]hat is important is not whether the instruction followed the model, but whether the instruction informed the jury of everything the government needed to prove." AOB 24. But York fails to inform this Court that the district court's jury instruction here "closely tracked" and "followed" not just the model jury instruction, but also *Tomsha-Miguel*. And nowhere in his brief does York acknowledge that *Tomsha-Miguel* relied on and cited the same model instruction that York faults the district court for using. Nor does York ever mention that *Tomsha-Miguel* held that Section 912[1] has only "two elements: the impersonation of an officer or employee and acting 'as such.'" 766 F.3d at 1045.

On appeal, York asserts that *Tomsha-Miguel* "had no occasion to address" whether "intent to deceive" is a separate essential element of Section 912[1], because the defendant in that case "did not challenge the jury instructions." AOB 21. Similarly, York argued below that the opinion "did not actually address jury instructions." ER 109. But the defendant in *Tomsha-Miguel* disputed the elements of Section 912[1]. 766 F.3d at 1049-50. And she argued that the evidence at her

31

trial was insufficient. *Id.* at 1044-45. In rejecting her sufficiency argument—the first issue addressed in the opinion—this Court quoted Section 912, then described how the statute "sets forth two distinct offenses." *Id.* at 1045. The Court cited *Mitman* and Ninth Circuit Model Jury Instruction 8.50. *Tomsha-Miguel*, 766 F.3d at 1045. Immediately thereafter, the Court held that Section 912[1] "has two elements"—the very same elements listed in the model instruction. *Id*.

York's main argument on appeal, however, is that Model Criminal Jury Instruction 8.50 is defective because it lists only two elements. And York argues that the district court committed reversible error and denied him due process by instructing the jury based on the model instruction. AOB 21-24. For this claim, York relies primarily on *Tomsha-Miguel*. But *Tomsha-Miguel* does not help him. *Tomsha-Miguel* not only cites Model Criminal Jury Instruction 8.50, but explicitly holds that Section 912[1] "has two elements"—not three, as York claims. Thus, far from supporting York's instructional-error claim, *Tomsha-Miguel* refutes it.

2. Tomsha-Miguel*'s constitutional analysis of Section 912 is consistent with the district court's jury instruction here*

Rather than address *Tomsha-Miguel*'s endorsement of Model Criminal Jury Instruction 8.50 or this Court's dispositive holding that Section 912[1] "has two elements," 766 F.3d at 1045, York focuses on a later section of the opinion concerning the constitutionality of Section 912—a question not before the Court

32

here.[9]  In its First Amendment analysis, *Tomsha-Miguel* noted that Section 912 "reaches only those acts that are intentionally deceptive."  766 F.3d at 1049.  But the Court reached that conclusion "[b]ecause § 912's statutory elements *incorporate* an intent to deceive," *id.* (emphasis added), and not because—as York suggests—intent to deceive is an independent element.  AOB 21-24.  *Tomsha-Miguel* did not hold, and this Court has never held, that "intent to deceive" is a separate element of Section 912 on which a jury must be instructed.  On the contrary, *Tomsha-Miguel* held that the statute "has two elements," 766 F.3d at 1045, neither of which was an "intent to deceive."

Moreover, rather than overturning or even casting doubt on Model Criminal Jury Instruction 8.50, *Tomsha-Miguel*'s constitutional analysis—including this Court's assessment that Section 912's "statutory elements incorporate an intent to deceive," 766 F.3d at 1049—is fully consistent with both the model instruction and the similar jury instruction delivered by the district court here.

To act "falsely" is to act deceptively.  Black's Law Dictionary defines *false* to include, for example, "[d]eceitful" and "lying," and gives as an example "a false witness."  *Black's Law Dictionary* 718 (10th ed. 2014).  Black's similarly defines *misrepresentation*, also called *false representation*, as including "[t]he act or an

_____

[9]  Although York suggests in a footnote that Section 912 may be unconstitutional, notwithstanding this Court's contrary holding in *Tomsha-Miguel*, *see* AOB 18 n.13, he raises no constitutional challenge in this appeal.

33

instance of making a false or misleading assertion about something, usu[ally] with the intent to deceive." *Id.* at 720, 1152; *see also United States v. Chappell*, 691 F.3d 388, 393 (4th Cir. 2012) (finding that "the word 'falsely' expressly fulfills [the] function" of establishing the scienter requirement of a state false personation statute); *United States v. Achtner*, 144 F.2d 49, 52 (2d Cir. 1944) ("[T]he word 'falsely,' particularly in a criminal statute, suggests something more than a mere untruth and includes 'perfidiously' or 'treacherously' . . . ."). Deception is thus inherent in Section 912[1]'s requirement that a defendant "falsely" assume or pretend to be a federal official.

Similarly, Section 912[1]'s requirement that a defendant "act[] as such" excludes from the statute's scope truly innocuous conduct. To be culpable under Section 912[1], a defendant must commit an overt act that is "in furtherance of the impersonation," and must act in a way that goes "beyond mere bravado." *Tomsha-Miguel*, 766 F.3d at 1046 (internal quotation marks omitted). The statute does not reach merely playful or innocent conduct.

York's arguments to the contrary are unavailing. He asserts that unless courts treat "intent to deceive" as a separate statutory element of Section 912[1], Section 912 would become a "strict liability crime," AOB 3, 12, rendering a defendant's "intent irrelevant," AOB 23. In support of that argument, York offers hypothetical examples of a potentially culpable person who "dresses up as an FBI

34

agent at a costume party or on the playground," AOB 19.  York's trial counsel made similar analogies in his closing statement.  ER 261-62.  Counsel also analogized York to "a comedian in a nightclub" who says he is President Obama and, while on the nightclub stage, pretends to appoint an audience member to his cabinet.  ER 262.

York's hypotheticals are unpersuasive.  Indeed, this Court rejected similar ones in *Tomsha-Miguel*, 766 F.3d at 1049.  The defendant there argued that Section 912[1] "is facially overbroad because it results in the prohibition of a wide spectrum of innocent speech, including political parodies, theatrical performances, and student mock government exercises."  *Id.*  This Court held, however, that the statute "does not reach the 'innocent' speech that Tomsha-Miguel identifies."  *Id.*

Indeed, neither a kid on the playground, an adult at a costume party, nor a standup comedian in a club "*falsely* assumes or pretends" to be a federal official. 18 U.S.C. § 912 (emphasis added).  York's hypothetical people also do not "act[] as such," *id.*, because none of them takes "actions . . . consistent with the assumed character of a government official, and in furtherance of the impersonation," *Tomsha-Miguel*, 766 F.3d at 1046 (internal quotation marks omitted).  Rather, the kid on the playground and the grownup at a costume party act consistently with a dress-up game, and in furtherance of that game; the comedian performs

35

consistently with his standup act, and in furtherance of it. To appoint cabinet members from a nightclub stage does not further any false personation.

In short, just as the Fourth Circuit recently observed in rejecting a constitutional challenge to a state false personation statute, "it is ludicrous to suggest that costumed party-goers, children, and actors will be prosecuted for pretending to be police officers." *Chappell*, 691 F.3d at 393. A leading treatise similarly notes that "the ancient customs of masquerade and trick-or-treating antedate, and have survived, enactment of false personation statutes, which clearly are not designed to eliminate these innocuous practices." 35 C.J.S. *False Personation* § 1 (2016). York's hypotheticals are therefore inapt.

### 3. York's "intent to deceive" argument is merely a repackaging of his prior incorrect "intent to defraud" argument

On appeal, York attempts to draw a distinction between his argument that Section 912[1] requires an "intent to deceive" and this Court's clear holding that the statute does not require an "intent to defraud." *E.g.*, AOB 16. But as is clear from the chronology described above, in part II.B, York's "intent to deceive" argument is little more than a repackaging of his earlier, incorrect argument that Section 912[1] requires an "intent to defraud." SER 36; ER 88-89.

Indeed, even at sentencing, York continued to argue that he lacked fraudulent intent. *E.g.*, SER 30 ("At trial the Government introduced no evidence that Mr. York intended to defraud Mr. Hessenflow . . . ."); SER 32 (arguing that

"there is no evidence that Mr. York was trying to defraud Mr. Hessenflow out of anything"); *id.* (York's conduct did not "cause[] the type of harm proscribed by the statute" because, among other reasons, "[t]here was no fraud—no money was sought"); SER 14. Whether labeled "intent to deceive" or "intent to defraud," however, York's claim is refuted by this Court's caselaw and Section 912's text.

At bottom, York simply disagrees with this Court's interpretation of Section 912 as having "two elements." *Tomsha-Miguel*, 766 F.3d at 1045; *see* ER 113 (arguing that "*Tomsha-Miguel* was wrongly decided as to the fraud" issue); SER 36 (noting that York wished to "preserve his right to appeal due to a Circuit split on the issue of intent to defraud" and citing *Tomsha-Miguel*). York would prefer that this Court interpret Section 912 as the Fifth Circuit does: by requiring "proof of a third element—that the impersonator act with fraudulent intent, that is, intent to deceive another to act differently than he would have acted absent the deception." *United States v. Tullos*, 356 F. App'x 727, 728 (5th Cir. 2009).[10]

---

[10] The Fifth Circuit's approach also is reflected in the Eleventh Circuit model jury instruction that York urged the district court to incorporate into its jury instruction. ER 122, 340-41, 349; *see United States v. Randolph*, 460 F.2d 367, 370 (5th Cir. 1972) (holding that "fraudulent intent" remains an "essential element in a prosecution under part [1] of § 912" and is defined as "the intent by artifice and deceit to cause another to follow some course he would not have pursued but for the deceitful conduct"); *see also United States v. Gayle*, 967 F.2d 483, 484, 486-87 (11th Cir. 1992) (en banc) (holding that "intent to defraud," also called "intent to deceive," remains an element of Section 912 after the 1948 recodification, but need not be specifically alleged in indictment).

But as this Court and others have recognized, the Fifth Circuit is an outlier in its interpretation of Section 912. *See, e.g.*, *Tomsha-Miguel*, 766 F.3d at 1050 ("the majority of our sister circuits have also held that the government need not establish an intent to defraud as a separate element of a § 912 offense"); *Bushrod*, 763 F.2d at 1053; *see also* 2 Fed. Jury Prac. & Instr. § 38:03 (6th ed. 2015) ("Intent to defraud is not included in the pattern Essential Elements of the Offense Charged instruction since Congress omitted this requirement in its 1948 revision of the statute. The Fifth Circuit . . . does require that such intent be alleged and proven."); *United States v. Wilkes*, 732 F.2d 1154, 1157 (3d Cir. 1984) (observing that "[t]he Fifth Circuit stands alone in its interpretation of the requirements of indictments alleging violations of section 912[1] and [2]," and noting that six other circuits, including the Ninth Circuit, "disagree with the Fifth Circuit's interpretation of *Lepowitch* and the subsequent penal code revision").[11]

Despite this Court's clearly contrary precedent, York would have this Court, like the Fifth Circuit, read back into Section 912 a separate element that Congress

---

[11] Further underscoring the close relationship between York's "intent to defraud" and "intent to deceive" arguments, the Fifth Circuit reads those two phrases as synonymous for purposes of Section 912, holding that the statute "requires proof of a third element—that the impersonator act with fraudulent intent, that is, intent to deceive another to act differently than he would have acted absent the deception." *Tullos*, 356 F. App'x at 728 (citing *Randolph*, 460 F.2d at 370). Likewise, the Eleventh Circuit treats the two phrases, "intent to deceive" and "intent to defraud," as interchangeable for purposes of Section 912. *Gayle*, 967 F.2d at 484, 486-87.

deleted when it revised and recodified the statute in 1948. York's proposal

contravenes core principles of statutory construction. *See Voting Integrity Project,*

*Inc. v. Keisling*, 259 F.3d 1169, 1174 (9th Cir. 2001) ("Congress does not intend

*sub silentio* to enact statutory language that it has earlier discarded in favor of other

language"); *United States v. Guthrie*, 387 F.2d 569, 571 (4th Cir. 1967) ("[W]here

Congress has advertently changed the legislative language the change must be

given effect."). Here, "to restore the phrase that was intentionally omitted" from

Section 912 would be "contrary to the apparent intent of Congress," because "[i]t

cannot be assumed in these circumstances that Congress deleted an element

theretofore regarded as essential without intending to affect the meaning of the

statute." *Guthrie*, 387 F.2d at 571; *see Gayle*, 967 F.2d at 486 (noting that "[t]he

Second, Fourth, Seventh, and Ninth Circuits" all "subscribe to the philosophy" of

*Guthrie*); *see also Tomsha-Miguel*, 766 F.3d at 1050 (citing *Guthrie*).

Moreover, York's approach contravenes *Tomsha-Miguel*, where this Court

cited Model Criminal Jury Instruction 8.50 and held that Section 912[1] "has two

elements: the impersonation of an officer or employee and acting 'as such.'" 766

F.3d at 1045. Here, the district court was bound by that holding—not by any other

circuit's interpretation of the statute, and not by any other circuit's model jury

instruction.[12]  The district court correctly instructed the jury as to each of Section 912[1]'s two elements, in accordance with both Model Criminal Jury Instruction 8.50 and *Tomsha-Miguel*.  ER 276.  Because the district court committed no instructional error, much less any "violation of due process," AOB 24, this Court should affirm.

### D.    "Materiality" Is Not An Element Of Section 912

York argues that Section 912[1] contains not just a third element ("intent to deceive"), but also an "implicit" fourth element on which the district court also was required to instruct the jury: "materiality."  AOB 4, 26-28.  But as with his unavailing "intent to deceive" argument, York's materiality argument finds no support in the statutory text of Section 912[1].  Nor has this Court construed Section 912[1] to "include[] an implicit materiality requirement" on which juries must be instructed.  AOB 27.  As noted above, this Court has identified Section 912[1] as having "two elements," and only two: "the impersonation of an officer or employee and acting 'as such.'"  *Tomsha-Miguel*, 766 F.3d at 1045.

In the fraud context, materiality means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or

---

[12]  Indeed, if, as York argues, it "makes no difference" that the district court relied on this Court's Model Criminal Jury Instruction 8.50, AOB 24, then surely it cannot be the case that the district court was required to adopt elements of other circuits' model instructions, as York requested.

property." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2002 (2016) (citing *Neder v. United States*, 527 U.S. 1, 16 (1999); *Kungys v. United States*, 485 U.S. 759, 770 (1988)). "This materiality requirement descends from common-law antecedents," and "the common law could not have conceived of 'fraud' without proof of materiality." *Universal Health Servs., Inc.*, 136 S. Ct. at 2002 (internal quotation marks omitted); *see also Neder*, 527 U.S. at 21-24. "Under any understanding of the concept, materiality 'looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Universal Health Servs., Inc.*, 136 S. Ct. at 2002 (quoting 26 R. Lord, Williston on Contracts § 69:12 at 549 (4th ed. 2003)) (brackets omitted).

As described above, Congress in 1948 stripped the fraudulent-intent requirement from Section 912. Accordingly, it would make no sense to read into the statute an implicit materiality requirement, a concept intertwined with fraud. *See Neder*, 527 U.S. at 16. Nor does Section 912[1] focus on "the effect on the likely or actual behavior of" a misrepresentee. *See Universal Health Servs., Inc.*, 136 S. Ct. at 2002 (internal quotation marks omitted). Rather, the "mischief to be cured" by the statute is the misrepresentation itself—that is, the "false pretense of Federal authority." *Barnow*, 239 U.S. at 78. Likewise, this Court has held that "the aim of" Section 912 is "not merely to protect innocent persons from actual loss through reliance upon false assumptions of Federal authority, but to maintain

41

the general good repute and dignity of the [government] service itself." *Aguilar*, 756 F.2d at 1425 (quoting *Barnow*, 239 U.S. at 80) (brackets in original). And in *Tomsha-Miguel*, this Court recognized that "the government's interests are concerned *solely with the act of impersonation itself, not the content of the impersonation*." 766 F.3d at 1049 (emphasis added).

Counter to this line of precedent, York argues that what matters is the content of the impersonation and whether anyone was misled. *See, e.g.*, AOB 4 ("in any event, nobody was actually deceived"); AOB 19 (arguing that if "it is understood by all that the person is not really an FBI agent," then "his or her actions do not reflect on the government"); AOB 19 n.14 ("it is unlikely that the government's reputation will be affected unless the pretense is successful"); AOB 25-26 (asserting that York used "deliberately unprofessional wording" in the voicemail, that his voice was "obviously disguised," and that York may have created the fake call-back number so that Hessenflow "would immediately realize that the call was a prank"); AOB 28 ("Mr. Hessenflow was not fooled by Mr. York's masquerade"). But Section 912 does not require a successful ruse. For a defendant to be convicted, no one needs to be fooled or otherwise harmed by the misrepresentation. *See, e.g.*, *Bushrod*, 763 F.2d at 1053 (rejecting defendant's argument that "for him to have violated section 912," his target "must have believed the misrepresentation").

42

At any rate, contrary to York's argument, the record does not establish that Hessenflow immediately understood that the February 23 voicemail was fake or that York was behind it. Rather, Hessenflow testified that he did *not* know right away whether the call came from the IRS or whether the IRS was investigating him. ER 40, 49. That is why he Googled the phone number that appeared on his caller ID—to see if it was associated with an IRS office. ER 40, 69. The language of the voicemail also made Hessenflow "suspicious." ER 69. Once Hessenflow's Google search had made him "fairly certain" that the call did not come from an IRS office, Hessenflow "searched online for who to report the impersonation to." ER 40. He emailed TIGTA the day after receiving the voicemail. ER 41, 331. At that time, Hessenflow "didn't know" the call had come from York, but suspected it had based on York's recent "pattern of harassment." ER 49.

Furthermore, even if it were true that Hessenflow concluded immediately that the call was a hoax and that York was behind it, *see* ER 68-69, that fact would be immaterial, since Section 912 does not require proof that a false personation actually fooled anyone, *see Bushrod*, 763 F.2d at 1053, or even that it was likely to do so.

Indeed, even where a defendant claims to have "held a nonexistent office and claimed nonexistent authority," he can be convicted under Section 912 because "the nonexistence of an office that a person pretends to hold is no defense to a

43

prosecution under the false personation statute, nor does it matter that the authority claimed by the personator is not actually possessed by any officer or employee of the United States." *United States v. Maxwell*, 920 F.2d 1028, 1037 n.11 (D.C. Cir. 1990) (evidence sufficient to sustain conviction even though defendant held herself out as nonexistent "Special Consultant" at Treasury Department); *see also Caruso v. United States*, 414 F.2d 225, 227 (5th Cir. 1969) ("immaterial" whether position falsely assumed by defendant actually existed). Here, by contrast, York claimed to work for a real agency of the United States (the IRS) and to exercise actual authority (investigating someone as part of a tax audit). And his false personation was consistent with the actions of an actual IRS agent. ER 215-16, 234.

Comparing Section 912 to other false-representation statutes further undermines York's "materiality" claim. Such a comparison makes clear that, had Congress intended to include a materiality element in Section 912[1], it could have done so explicitly by writing materiality into the statutory text. For example, 18 U.S.C. § 1001, which criminalizes certain false statements, refers to falsifying, concealing, or covering up "a material fact," *id.* § 1001(a); making or using a false writing or document knowing it to contain "any materially false, fictitious, or fraudulent statement or entry," *id.* § 1001(a)(3); and making a "materially false,

fictitious, or fraudulent statement or representations," *id.* § 1001(b).[13]  Similarly,

18 U.S.C. § 1621 refers to perjurious statements concerning "any material matter."

And 18 U.S.C. § 1546(a) criminalizes false statements made "with respect to a

material fact" in any pertinent "application, affidavit, or other document."  In

Section 912, by contrast, Congress included no materiality requirement, and this

Court should not create one.

## III. EVEN IF THE DISTRICT COURT COMMITTED INSTRUCTIONAL ERROR, THE ERROR WAS HARMLESS

### A. Standard Of Review

This Court "appl[ies] harmless error analysis to determine whether an

improper instruction constitutes reversible error."  *United States v. Munguia*, 704

F.3d 596, 598 (9th Cir. 2012).  "An error in misdescribing or omitting an element

of the offense in a jury instruction is harmless if it is 'clear beyond a reasonable

doubt that a rational jury would have found the defendant guilty absent the error.'"

*United States v. Thongsy*, 577 F.3d 1036, 1043 (9th Cir. 2009) (quoting *Neder*, 527

U.S. at 18).  "Harmless errors are not reversible."  *Garcia*, 729 F.3d at 1175.

---

[13]  In arguing that this Court should construe an "implicit" materiality requirement in Section 912, York cites *United States v. Gaudin*, 515 U.S. 506, 509 (1995), a case concerning a prosecution under 18 U.S.C. § 1001, a statute that (as noted above) includes an explicit materiality requirement in its text.  AOB 27.  The parties in that case agreed, and the Supreme Court recognized, that Section 1001 "requires that the statements be 'material' to the Government inquiry, and that 'materiality' is an element of the offense that the Government must prove."  515 U.S. at 509.  *Gaudin* is therefore inapposite.

## B.     Argument

The evidence of York's guilt is overwhelming and largely undisputed. Uncontroverted evidence at trial proved not just that York left the voicemail for Hessenflow, but that York used his credit card to set up the Spoofcard account; that York disguised his voice so he would sound like a woman; that York used a false name, "Judy Smith"; that York claimed to be "with the IRS" and conducting a tax investigation of Hessenflow as part of a "tax audit"; that York said he would need to check Hessenflow's tax records for 2005, 2006, and 2007; that York asked Hessenflow to call him back at a fake phone number; and that the spoofed callback number resembled an actual IRS hotline number.  The jury also heard uncontroverted testimony that York's message was consistent with the actions of an actual IRS investigator.  ER 216, 234.

Under these circumstances, no rational juror could have found that York lacked an "intent to deceive" his victim, even if that were a separate element of Section 912—which it is not.  Likewise, even if "materiality" were required under Section 912[1]—which it is not—the evidence established that York's deception was material because it was designed to make Hessenflow act in a way he would not have acted otherwise.  Whether York intended for Hessenflow to gather together his tax records, attempt to call York back at the spoofed phone number, call a different IRS number to determine whether York's voicemail was legitimate,

46

or merely panic, it is plain that York wanted Hessenflow to react *somehow*, and to

"follow some course he would not have pursued but for the deceitful conduct."

*Lepowitch*, 318 U.S. at 704.  Otherwise, York would not have gone to all this

trouble—setting up a Spoofcard account, creating a fake phone number to appear

on Hessenflow's caller ID, disguising his voice to sound like a woman's, devising

a fake name, and claiming to be calling from the IRS.

York presented no evidence and put on no case.  ER 239.  As he

acknowledged at sentencing, "[t]here is little dispute as to the facts of the case."

SER 30.  Thus, because the evidence of his guilt was overwhelming, *see Neder*,

527 U.S. at 17, and because York "did not, and apparently could not," *id.* at 19,

introduce evidence to negate his deceptive intent or the materiality of that

deception, any alleged instructional error was harmless beyond a reasonable doubt.

# CONCLUSION

For the reasons stated, this Court should affirm York's conviction and

sentence.

Dated: July 25, 2016                      Respectfully submitted,

                                          BRIAN J. STRETCH
                                          United States Attorney

                                          BARBARA J. VALLIERE
                                          Chief, Appellate Division

                                          _____/s/ Jonas Lerman_____
                                          JONAS LERMAN
                                          Assistant United States Attorney

                                          Attorneys for Plaintiff-Appellee
                                          UNITED STATES OF AMERICA

## STATEMENT OF RELATED CASES

Pursuant to Rule 28-2.6(a) of the United States Court of Appeals for the

Ninth Circuit, counsel for the United States of America states that he is not aware

of any related cases to this appeal.

Dated: July 25, 2016        /s/ Jonas Lerman

               JONAS LERMAN
               Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because:

X   the brief contains <u>11,280 </u>words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); or

\_\_   this brief uses a monospaced typeface and contains \_\_\_\_\_lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. (32)(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

X   the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 program, with 14-font size Times New Roman style; or

\_\_\_   the brief has been prepared in a monospaced spaced typeface using _____program with \_\_\_\_characters per inch and _____style.

Dated: July 25, 2016            /s/ Jonas Lerman
                                 JONAS LERMAN
                                 Assistant United States Attorney

## CERTIFICATE OF SERVICE

I, Hui Chen, certify that I am an employee of the Office of the United States Attorney, Northern District of California, a person over 18 years of age and not a party to the within action. I certify that on July 25, 2016, I electronically submitted the

- **Brief for the United States as Appellee**
- **Government's Supplemental Excerpts of Record (1 Volume)**

in the case of *United States v. Douglas York*, No. 16-10010, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 25, 2016

/s/ Hui Chen

Hui Chen, Paralegal

51