**No. 16-10010**

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DOUGLAS STROMS YORK,

Defendant-Appellant.
_____

**GOVERNMENT'S SUPPLEMENTAL EXCERPTS OF RECORD
VOLUME I OF I**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 5:15-CR-00226 EJD
_____

**BRIAN J. STRETCH**
United States Attorney

**BARBARA J. VALLIERE**
Chief, Appellate Division

**JONAS B. LERMAN**
Assistant United States Attorney
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
Telephone: (415) 436-7241

**Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA**

# TABLE OF CONTENTS

## VOLUME I OF I

Transcript of Sentencing Hearing, January 4, 2016
  (Docket #115) ...................................................................... SER0001

United States' Sentencing Memorandum
  (Docket #95, December 29, 2015) ...................................... SER0025

Defendant's Sentencing Memorandum
  (Docket #94, December 28, 2015) ...................................... SER0029

(Excerpted) Parties' Joint Proposed Jury Instructions
  - Disputed Instruction No. 28: False Impersonation of
    Federal Officer or Employee
    (Docket #37, July 9, 2015) ............................................ SER0036

Defendant's Opposition to Government's Motion in Limine No. 1
  (Docket #31, July 9, 2015) ................................................. SER0037

9th Circuit Model Criminal Jury Instruction 8.50:
  False Impersonation of Federal Officer or Employee ...................... SER0041

i

1          UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
2                 SAN JOSE DIVISION

3
      UNITED STATES OF AMERICA,
4
              PLAINTIFF,              CASE NO.  CR-15-0226-EJD
5
          VS.                         SAN JOSE, CALIFORNIA
6
      DOUGLAS STROMS YORK,            JANUARY 4, 2016
7
              DEFENDANT.              PAGES 1 - 23
8

9
                  TRANSCRIPT OF SENTENCING
10         BEFORE THE HONORABLE EDWARD J. DAVILA
              UNITED STATES DISTRICT JUDGE
11

12              A-P-P-E-A-R-A-N-C-E-S

13
      FOR THE PLAINTIFF:    OFFICE OF THE UNITED STATES ATTORNEY
14                          BY:   JEFF SCHENK
                            50 ALMADEN BOULEVARD, SUITE 900
15                          SAN JOSE, CALIFORNIA 95113

16
      FOR THE DEFENDANT:    OFFICE OF THE FEDERAL PUBLIC DEFENDER
17                          BY:   GRAHAM ARCHER
                            55 S. MARKET STREET, SUITE 820
18                          SAN JOSE, CALIFORNIA 95113

19    U.S. PROBATION:       KYLE POLLAK

20     OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                   CERTIFICATE NUMBER 8074
21

22       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
      TRANSCRIPT PRODUCED WITH COMPUTER.
23

24

25

SER0001

```
 1      SAN JOSE, CALIFORNIA                    JANUARY 4, 2016

 2                        P R O C E E D I N G S

 3          (COURT CONVENED AT 3:30 P.M.)

 4                THE CLERK:  PLEASE BE SEATED.

 5                THE CLERK:  CALLING CASE NUMBER 15-226, UNITED

 6      STATES VERSUS DOUGLAS YORK.

 7                MR. SCHENK:  JEFF SCHENK FOR THE UNITED STATES.

 8      GOOD AFTERNOON.

 9                THE COURT:  GOOD AFTERNOON.

10                MR. ARCHER:  GOOD AFTERNOON, YOUR HONOR.

11      GRAHAM ARCHER FOR MR. YORK WHO APPEARS BEFORE THE COURT OUT OF

12      CUSTODY.

13                THE DEFENDANT:  GOOD AFTERNOON.

14                THE COURT:  GOOD AFTERNOON.

15                PROBATION OFFICER:  GOOD AFTERNOON, YOUR HONOR.

16      KYLE POLLAK FOR U.S. PROBATION.

17                THE COURT:  THIS MATTER APPEARS BEFORE THE COURT FOR

18      SENTENCING.

19          ARE ALL PARTIES READY TO PROCEED?

20                MR. ARCHER:  YES, YOUR HONOR.

21                MR. SCHENK:  YES, YOUR HONOR.

22                THE COURT:  AND I DO HAVE THE PROBATION REPORT.  ARE

23      THERE ANY ADDITIONS, DELETIONS TO THE REPORT?  ANY CHANGES TO

24      THE REPORT?

25                PROBATION OFFICER:  NOT FROM PROBATION, YOUR HONOR.
```

SER0002

```
1              MR. ARCHER:  OKAY.  I DON'T THINK I HAVE THAT POWER,
2      YOUR HONOR.
3              THE COURT:  OKAY.  I WANT TO REFER US TO PAGE 24,
4      PARAGRAPH 63.  I THINK THERE'S A TYPO.  LET'S SEE.  I GUESS I
5      SHOULD ASK IF THERE'S A TYPO IN THE PARAGRAPH THAT DESCRIBES
6      THE 9-13-2015 OFFENSE, THE THIRD LINE, I THINK THE WORD SHOULD
7      READ "ATTACKED."
8              PROBATION OFFICER:  THAT'S CORRECT, YOUR HONOR.
9              THE COURT:  SO WE'LL CORRECT THAT.
10      LET ME INDICATE THAT I HAVE REVIEWED THE DEFENDANT'S
11      SENTENCING MEMORANDUM, DOCUMENT NUMBER 94; I'VE REVIEWED THE
12      UNITED STATES SENTENCING MEMORANDUM, DOCUMENT NUMBER 95, AS
13      WELL AS THE PRESENTENCE REPORT.
14      ANY OTHER DOCUMENTS THAT I HAVEN'T REFERENCED THAT COUNSEL
15      HAVE SUPPLIED?
16              MR. ARCHER:  NO, YOUR HONOR.
17              MR. ARCHER:  NO, YOUR HONOR.
18              THE COURT:  ALL RIGHT.  THANK YOU.  LET'S GO THROUGH
19      THE GUIDELINE CALCULATIONS.
20      AND, FIRST OF ALL, I THINK THOSE APPEAR ON PAGE 8,
21      BEGINNING ON PAGE 8 OF MR. POLLAK'S REPORT.  THE BASE OFFENSE
22      LEVEL IS 6.  THE TOTAL OFFENSE LEVEL IS 6.  THE CRIMINAL
23      HISTORY CATEGORY IS 6.  THAT YIELDS A GUIDELINE CALCULATION OF
24      12 TO 18 MONTHS.
25              DO COUNSEL AGREE WITH THE GUIDELINE CALCULATION?
```

SER0003

1          MR. SCHENK:  YES, YOUR HONOR.

2          MR. ARCHER:  YES, YOUR HONOR.

3          THE COURT:  ALL RIGHT.  THANK YOU.  DO EITHER

4     COUNSEL WISH TO BE HEARD?

5          MR. ARCHER:  YES, YOUR HONOR.  AND I DON'T KNOW HOW

6     THE COURT WOULD LIKE TO STRUCTURE IT.  MR. YORK WOULD LIKE TO

7     TALK TO THE COURT BRIEFLY AND HIS MOTHER, PAMELA BEALE, WOULD

8     ALSO LIKE TO TALK TO THE COURT, AND THEN I WILL MAKE SOME

9     ARGUMENTS.

10          THE COURT:  ARE THERE ANY VICTIMS PRESENT?

11          MR. SCHENK:  THERE IS A VICTIM PRESENT, BUT THE

12     VICTIM DOES NOT WISH TO BE HEARD.

13          THE COURT:  SHOULD WE IDENTIFY THE VICTIM FOR THE

14     RECORD?

15          MR. SCHENK:  YOUR HONOR, MR. HESSENFLOW.

16          THE COURT:  ALL RIGHT.  THANK YOU, SIR.  WE'LL NOTE

17     YOUR PRESENCE.  THANK YOU FOR BEING HERE.

18       WELL, LET ME ASK, DOES THE GOVERNMENT WISH TO BE HEARD?

19          MR. SCHENK:  YES, YOUR HONOR, ON THE SENTENCING.

20          THE COURT:  YES.

21          MR. SCHENK:  SURE.  THE GOVERNMENT ASKS THE COURT TO

22     IMPOSE A GUIDELINE SENTENCE OF 12 MONTHS.  PROBATION ASKS FOR

23     12 MONTHS AND 1 DAY.  THE COURT KNOWS THE SIGNIFICANCE OF THE

24     ADDITIONAL DAY.

25       THE REASON THE COURT SHOULD NOT GIVE MR. YORK THAT BENEFIT

SER0004

1    IS BECAUSE WHEN THE GOVERNMENT CAME UP WITH ITS SENTENCING

2    RECOMMENDATION, IT'S REQUIRED TO, AS THE COURT IS, LOOK AT THE

3    FACTORS IN 3553(A), AND THEY REALLY DIVIDE IT INTO TWO

4    CATEGORIES, SPECIFIC AND GENERAL DETERRENCE.

5         I CAN'T MAKE A VERY GOOD ARGUMENT FOR YOU WHY THE COURT

6    RECEIVES MUCH MARGINAL BENEFIT TO INCREASING THE SENTENCE FOR

7    GENERAL DETERRENCE.

8         MUCH OF THE DEFENDANT'S SENTENCING MEMO, AND, FRANKLY, HIS

9    TREATMENT OF THE CASE IS DISMISSIVE OF THE OFFENSE; RIGHT?

10   THIS IS NOT WHAT THE STATUTE WAS SUPPOSED TO CHARGE.  I CAN'T

11   BELIEVE THAT A FEDERAL CASE WAS MADE OUT OF THIS.  LOOK AT ALL

12   OF THE REALLY BAD CONDUCT THAT COULD STILL FIT IN THIS STATUTE,

13   AND, THEREFORE, RELATIVELY SPEAKING, MR. YORK'S CONDUCT REALLY

14   WASN'T THAT BAD.

15        PEOPLE ARE NOT GOING TO CHOOSE TO COMMIT THIS CRIME 912 OR

16   NOT COMMIT THIS CRIME IF YOUR HONOR IMPOSES A 14 MONTH SENTENCE

17   OR 16 MONTH SENTENCE.  THE PUBLIC IS NOT GOING TO SAY, WELL, I

18   WOULD HAVE IMPERSONATED A FEDERAL OFFICER IF YOU GAVE HIM

19   16 MONTHS BUT BECAUSE YOU GAVE HIM 12 MONTHS, I'M NOT GOING TO

20   DO IT.

21        THIS IS NOT SOMETHING THAT THIS COURT IS CONSIDERING.

22   ANYTHING WITHIN THE GUIDELINES, FRANKLY, EVEN SOMETHING DOWN TO

23   TIME SERVED, SUFFERS FOR GENERAL DETERRENCE.

24        THERE IS SOME DIMINISHING RETURNS TO GENERAL DETERRENCE IF

25   YOU GO AS LONG AS A COUPLE OF MONTHS, THE TIME SERVED REQUEST.

SER0005

1   BUT REALLY THE REASON -- THE JUSTIFICATION TO IMPOSE A

2   GUIDELINE SENTENCE AND ONE THAT DOESN'T GIVE THE DEFENDANT THE

3   BENEFIT OF THE ADDITIONAL 12 MONTHS AND 1 DAY IS BECAUSE OF

4   SPECIFIC DETERRENCE.

5   MR. YORK HAS 21 CRIMINAL HISTORY POINTS. AT 13 YOU'RE IN

6   CATEGORY 6. SO ROUGHLY A THIRD OR MORE OF HIS POINTS HE GETS

7   NO ADDITIONAL PENALTY FOR.

8   I THINK PAGES 9 THROUGH 25 OF THE PSR SUMMARIZE HIS

9   CRIMINAL HISTORY.

10   WHEN MR. YORK IS IN PRISON OR IN JAIL, HE CAN'T COMMIT

11   OTHER CRIMES. WHEN HE'S NOT, IT SEEMS HE'S HAVING INTERACTIONS

12   WITH LAW ENFORCEMENT OR COMMITTING CRIMES FOR WHICH HE'S

13   CONVICTED OF.

14   AND IT'S BECAUSE OF THAT, THAT HE DOESN'T DESERVE THE

15   BENEFIT THAT ADDITIONAL DAY GIVES HIM, THAT'S WHY A SENTENCE AT

16   THE LOW END IS WHERE THE GOVERNMENT HAS GONE RECOGNIZING IT'S

17   NOT THE CRIME OF THE CENTURY.

18   BUT A SENTENCE MIDRANGE OR EVEN HIGH IS REASONABLE BECAUSE

19   WHEN THE GUIDELINES CAME UP WITH RANGES, THEY UNDERSTAND THAT

20   MORE THAN ONE INDIVIDUAL CAN SCORE AT THE SAME INTERSECTION OF

21   2 POINTS.

22   MORE THAN ONE INDIVIDUAL COMES BEFORE THE COURT WITH A 6

23   AND A CRIMINAL HISTORY CATEGORY 6 AND AN OFFENSE LEVEL 6.

24   LOTS OF DIFFERENT OFFENSES CAN RESULT IN THAT YIELDED

25   SCORE, BUT THE DIFFERENCE IS THAT EACH INDIVIDUAL HAS A UNIQUE

SER0006

1    HISTORY.  AND MR. YORK'S IS SIGNIFICANT INTERACTIONS WITH LAW

2    ENFORCEMENT AND ONES THAT RESULT IN CRIMINAL CONVICTIONS.

3        THIS IS SOMEONE WHO HAS SIGNIFICANT CONTACTS WITH LAW

4    ENFORCEMENT BUT VERY FEW CONVICTIONS.  HE HAS 21 CRIMINAL

5    HISTORY POINTS.

6        IT'S ACTUALLY DIFFICULT TO SCORE THAT MANY CRIMINAL

7    HISTORY POINTS BECAUSE IF YOU'VE HAD THAT MUCH INTERACTION WITH

8    LAW ENFORCEMENT, OFTEN THEY'RE LONG SENTENCES, AND YOU DON'T

9    RACK UP ADDITIONAL POINTS WHEN YOU'RE IN CUSTODY.

10        MR. YORK HAS MANY, MANY INTERACTIONS WITH LAW ENFORCEMENT,

11    MANY OF THOSE THAT SCORE AND MANY OF THOSE THAT HE DOESN'T GET

12    ANY PUNISHMENT FOR BECAUSE THE CRIMINAL HISTORY SCALE ONLY GOES

13    UP TO 6.

14        TO GIVE HIM 12 MONTHS AND A DAY IS TO GIVE HIM A BENEFIT,

15    IS TO GIVE HIM SOME REWARD, AND MR. YORK'S ACTIONS SUGGESTS

16    THAT HE DOESN'T DESERVE THAT ADDITIONAL AWARD, AND THE COURT'S

17    SENTENCE WOULD RECOGNIZE UNDER 3553(A) THE IMPORTANCE OF

18    SPECIFIC DETERRENCE OF PROTECTING THE COMMUNITY.

19        AND WHILE I AGREE WITH THE ABILITY OF A SENTENCE ANYWHERE

20    IN THE GUIDELINES TO GENERALLY DETER, A SIGNIFICANT SENTENCE

21    HERE, ONE THAT DOES NOT GIVE HIM THE ABILITY TO GET BELOW THE

22    YEAR THROUGH GOOD BEHAVIOR ACHIEVES THE ADDITIONAL BENEFIT OF

23    SPECIFIC DETERRENCE AND THAT REALLY IS NOT ACHIEVED BY GIVING

24    MR. YORK THE SENTENCE THAT THE DEFENSE ASKS FOR.

25            THE COURT:  THANK YOU.

SER0007

```
1              MR. ARCHER:  YOUR HONOR, WOULD THE COURT LIKE TO

2     HEAR FROM MS. BEALE PRIOR TO ARGUMENT OR --

3              THE COURT:  YES, MS. BEALE -- IS THAT HIS MOTHER?

4              MR. ARCHER:  IT IS, PAMELA BEALE.  AND I THINK SHE

5     WOULD LIKE TO ADDRESS THE COURT AS TO THE TRANSITION THAT

6     MR. YORK HAS UNDERGONE SINCE THE OFFENSE CONDUCT.

7              THE COURT:  ALL RIGHT.  PLEASE COME FORWARD, MA'AM.

8     AND IF YOU COULD PLEASE STATE AND SPELL YOUR NAME, PLEASE.

9              MS. BEALE:  PAMELA BEALE, P-A-M-E-L-A, B-E-A-L-E.

10             THE COURT:  THANK YOU.  THANK YOU FOR BEING HERE.

11    AND WHAT IS IT THAT YOU WOULD LIKE ME TO KNOW, MA'AM?

12             MS. BEALE:  WELL, OBVIOUSLY I'VE KNOWN MY SON SINCE

13    BIRTH, AND I WILL SAY THAT HE HAD A TENDENCY IN HIS EARLY YEARS

14    TO GET INTO A LOT OF GENERALLY LIGHT WEIGHT TROUBLE, VEHICLE

15    TYPE OF THINGS.

16        BUT DURING THIS TIME, THESE LAST THREE YEARS THAT THE

17    HEAVY DUTY STUFF HAD TO DO WITH STUFF HE WAS GOING THROUGH

18    DURING A VERY, VERY DIFFICULT DIVORCE AND CUSTODY PROCEEDING

19    AND IT SORT OF CULMINATED IN THIS ONE FEDERAL GUIDELINE FOR

20    WHICH HE WAS CONVICTED.

21        HE HAS BEEN WITH ME THE BETTER PART OF THIS YEAR, AND I

22    HAVE SEEN A HUGE CHANGE IN HIM.  AND IT'S -- HE'S JUST -- HE'S

23    A VALUABLE PERSON.  HE'S A VERY TALENTED MAN.  HE'S A

24    CONTRACTOR.  HE'S CREATIVE.  HE'S TOTALLY FOLLOWED THE

25    GUIDELINES THAT HAD TO DO WITH THE CUSTODY AND THE DIVORCE.
```

SER0008

```
 1          HE HASN'T VIOLATED ANY OF THOSE IN ANY WAYS.  HE HAS BEEN
 2     IN MY HOME WHERE HIS SON ALSO RESIDES.
 3               THE COURT:  YOU HAVE CUSTODY, I BELIEVE?
 4               MS. BEALE:  WELL, HE'S 18 NOW, BUT I DID HAVE
 5     CUSTODY, YEAH.
 6          AND HIS SON, I MEAN, HE'S BEEN A GREAT ASSET TO OUR LIFE
 7     DURING THESE PAST FEW WEEKS AND MONTHS BEFORE THAT.
 8          I REALLY FEEL THAT THIS HAS GONE ON AND HE'S HAD, YOU
 9     KNOW, WE'VE ALL SUFFERED FOR SOME EIGHT MONTHS OVER A STUPID
10     THING THAT WAS DONE ALMOST THREE OR FOUR YEARS AGO.
11          AND MY OWN INCLINATION WOULD BE ENOUGH IS ENOUGH, LET THIS
12     MAN GO ON AND RESUME A LIFE, A PRODUCTIVE LIFE, WHICH HE HAS
13     DONE FOR MUCH OF HIS LIFE, AND A CREATIVE LIFE AND, YOU KNOW,
14     HE'S BEEN IN CUSTODY QUITE A BIT JUST WAITING FOR ALL OF THESE
15     VARIOUS TRIALS AND THINGS LIKE THAT.
16          I'M SORRY.  I'M NOT VERY WITH IT TODAY BUT --
17               THE COURT:  NO, NO.  THIS IS, THIS IS --
18               MS. BEALE:  BUT MY POINT IS THAT THERE'S NOTHING TO
19     BE GAINED FROM THE GOVERNMENT FOR HIM.  HE'S NOT GOING TO GO
20     MAKE ANOTHER PRANK PHONE CALL IF HE IS ALLOWED TO BE DONE WITH
21     CREDIT FOR TIME SERVED, YOU KNOW, JUST BE DONE WITH THIS.
22               THE COURT:  OKAY.
23               MS. BEALE:  THANK YOU.
24               THE COURT:  THANK YOU VERY MUCH FOR BEING HERE,
25     MA'AM.
```

SER0009

1          MR. ARCHER:  YOUR HONOR, I WANT TO START OFF BY

2    SAYING THAT WE DON'T INTEND IN ANY WAY TO BE DISMISSIVE OF THE

3    UNDERLYING OFFENSE CONDUCT.  I DO THINK THAT IT IS ACCURATE

4    THAT THIS IS AT THE LOW END OF WHAT IS ENCOMPASSED BY THE

5    STATUTE.  HOWEVER, THIS WAS CERTAINLY PART OF A PATTERN OF

6    CONDUCT THAT MR. YORK WAS ENGAGED IN DURING HIS CUSTODY

7    DISPUTE.

8          HE RECOGNIZES THAT HE WAS BEHAVING POORLY.  HE -- THE

9    REASON HE TOOK IT TO TRIAL WAS BECAUSE THE INTENT SIMPLY WAS

10   NOT THERE TO IMPERSONATE A FEDERAL EMPLOYEE, BUT HE

11   ACKNOWLEDGES THAT THIS IS A PATTERN OF CONDUCT THAT HE ENGAGED

12   IN DURING THIS TIME THAT WAS HARMFUL TO BOTH ANDREA YORK AND TO

13   MR. HESSENFLOW.

14         HE HAS, SINCE THIS TIME, AND THIS IS, OF COURSE,

15   FEBRUARY 23RD OF 2012, HE DID NOT ENGAGE IN ANY FURTHER

16   HARASSMENT, HE DID NOT VIOLATE THE PROTECTIVE ORDER THAT WAS IN

17   PLACE.  HE WAS IN PRISON FOR SOME OF THAT, BUT HE DID NOT

18   ATTEMPT TO CONTACT MR. HESSENFLOW OR MS. YORK.

19         HIS MOTHER, I UNDERSTAND, HAS BEEN IN CONTACT WITH

20   MS. YORK AND HAS SEEN THE CHILDREN, AND MR. YORK HAS NOT

21   ATTEMPTED TO DO ANYTHING OUTSIDE OF THE BOUNDS OF WHAT HE IS

22   PERMITTED TO DO AND A BIG PART OF THAT IS THAT HIS INTENT IS TO

23   PUT HIS LIFE BACK ON TRACK.

24         THIS WAS A VERY NASTY PERIOD FROM ABOUT 2009 TO 2012 IN

25   HIS LIFE.  HE'S HOPEFUL THAT WITH THE PERMISSION OF

SER0010

1   ANDREA YORK, AND HE'S NOT APPROACHED HER ABOUT THIS, OF COURSE,

2   BUT AT SOME POINT HE WILL BE ABLE TO WIN HER RESPECT TO THE

3   EXTENT THAT HE'LL BE PERMITTED TO HAVE A RELATIONSHIP WITH HIS

4   DAUGHTERS AND CONTRIBUTE TO THEIR LIFE IN A MEANINGFUL WAY.

5           THE COURT:  THEY ARE HIS MINOR DAUGHTERS?

6           MR. ARCHER:  THEY ARE, CORRECT.

7           THE COURT:  AND THE COURT HAS JURISDICTION, HAS

8   JURISDICTION OR THE FAMILY COURT HAS JURISDICTION OVER --

9           MR. ARCHER:  CORRECT.  HE HAD CUSTODY OF THE

10  CHILDREN FOR ABOUT TWO YEARS, AND I WON'T GET INTO THE REASONS,

11  AND THERE WERE PERSONAL REASONS ON BOTH SIDES, AND HE WAS

12  DEEMED TO BE A BETTER GUARDIAN FOR A COUPLE OF YEARS, BUT,

13  FRANKLY, HIS MELTDOWN CONTINUED TO OCCUR, AND HE LOST CUSTODY

14  OF THE CHILDREN AND EVENTUALLY ENDED UP IN PRISON.

15      I THINK THAT --

16          THE COURT:  DOES HE HAVE -- I'M SORRY TO INTERRUPT

17  YOU.  DOES HE HAVE ANY VISITATION?  WHAT ARE HIS VISITATION

18  RIGHTS?

19          MR. ARCHER:  RIGHT NOW HE HAS NO VISITATION RIGHTS,

20  AND HE HAS NOT PETITIONED FOR ANY SINCE HIS RELEASE FROM

21  PRISON.

22          THE COURT:  OKAY.

23          MR. ARCHER:  SO THE -- I UNDERSTAND THE GOVERNMENT'S

24  POINT ABOUT THE CRIMINAL HISTORY POINTS AND I THINK THAT ONE

25  THING TO NOTE IS THAT IT'S -- THE NUMBERS -- THE HIGH CRIMINAL

SER0011

```
 1      HISTORY COUNTS TEND TO BE PEOPLE WHO ARE RELATIVELY MINOR

 2      INFRACTIONS, AND I DON'T WANT TO DOWNPLAY.  THERE ARE DOMESTIC

 3      VIOLENCE INCIDENTS WHICH I UNDERSTAND TO BE TROUBLING.  BUT THE

 4      FELONY CONDUCT AND HIS PRISON SENTENCE, IT'S THE ONLY TIME HE'S

 5      BEEN SENT TO PRISON.  THEY WERE FELONIES FOR RECEIVING STOLEN

 6      PROPERTY AND EVADING THAT RESULTED IN THE PROBATION VIOLATION

 7      AND HIS, HIS INCARCERATION IN PRISON.

 8              THE COURT:  IT'S INTERESTING BECAUSE THAT OFFENSE

 9      OCCURRED WHEN HE WAS 42 YEARS YOUNG.

10              MR. ARCHER:  CORRECT.

11              THE COURT:  AND HE'S 46 NOW.

12              MR. ARCHER:  YES.

13              THE COURT:  AND THE CRIMINAL HISTORY RECORD THAT WE

14      LOOK AT, I MEAN, YOU'RE RIGHT, AND I THINK COUNSEL IS CORRECT,

15      THIS SPANS MANY YEARS AND A LOT OF CONDUCT.  SOME OF IT IS NOT

16      SCORED BECAUSE IT'S TOO OLD, OF COURSE, AND I UNDERSTAND, AND I

17      THINK I UNDERSTAND YOUR POINT OF HOW SOMEONE COLLECTS

18      CATEGORY 6, HOW IS THAT POSSIBLE BECAUSE YOU THINK SOMEBODY

19      GETS EXTENDED AMOUNTS OF TIME AND THEY WILL BE 80 YEARS YOUNG

20      WHEN THEY GET OUT OF PRISON AND IT'S JUST -- THAT'S ONE THING,

21      I'LL TELL YOU AND I'LL COMMENT IT'S NOTEWORTHY THAT THE

22      CRIMINAL HISTORY POINT TOTAL HERE WAS IMPRESSIVE IN ONE WAY.

23          I WAS IMPRESSED -- HOW DOES ANYONE ACCUMULATE THAT MANY

24      POINTS LIKE YOU SAY?

25              MR. ARCHER:  WHAT TENDS TO HAPPEN, AND I'VE SEEN
```

SER0012

1       THIS, NOT THAT I'M AN EXPERT ON IT, BUT I'VE SEEN THIS IN CASES

2       WHERE PEOPLE ARE PLACED ON PROBATION FOR RELATIVELY MINOR

3       OFFENSES AND THEN SUFFER PROBATION VIOLATIONS WHEN, FOR

4       INSTANCE, DRIVING ON A SUSPENDED LICENSE COMPOUNDS ITSELF AND

5       THEN THEY ALL GET RESOLVED IN ONE DAY WITH INTERVENING ARREST

6       DATES AND YOU END UP WITH 8 OR 10 POINTS FOR WHAT ENDS UP BEING

7       A 120 DAY OVERALL SENTENCE, ET CETERA.

8               THE COURT:  YES, HE HAS A NUMBER OF THESE, 120 DAY,

9       140 DAY.  HE HAS 21 ALIASES THAT HE USED ACCORDING TO THE

10      PRESENTENCE REPORT.

11              MR. ARCHER:  UNDERSTOOD.  ONE THING I DO WANT TO

12      CLARIFY IN THE PRESENTENCE REPORT, THERE WAS A COMMENT, WHICH I

13      CAN UNDERSTAND IF THE COURT FOUND DISTASTEFUL, WHICH WAS THAT

14      MR. YORK IS INTERESTED IN PARTICIPATING IN THERAPY TO FIND OUT

15      WHY HE ENGAGES IN RELATIONSHIPS WITH TOXIC WOMEN, AND I THINK

16      MR. YORK WILL ADDRESS THIS BRIEFLY.

17          BUT THAT COMMENT WAS NOT DIRECTED AT MR. YORK BY ANY

18      MEANS.  THE CONTEXT OF THAT COMMENT WAS THAT HE WAS SITTING IN

19      CUSTODY HAVING BEEN FALSELY ACCUSED OF COMMITTING DOMESTIC

20      VIOLENCE AGAINST HIS THEN EX-GIRLFRIEND BUT THE INVESTIGATION

21      OF THE DEFENSE REVEALED THAT SHE HAD ACTUALLY ASSAULTED HIM AT

22      AN NA MEETING A COUPLE OF DAYS BEFOREHAND, AND SHE WAS PLACED

23      ON A PSYCHIATRIC HOLD, AND SHE CAME BACK TO THE HOUSE.  AND THE

24      INTERVIEW OF THE FAMILY WHO WITNESSED THIS INDICATED THERE WAS

25      NO DOMESTIC VIOLENCE.  THE CASE WAS, IN FACT, DISMISSED.  AND

SER0013

1    THAT WAS THE OFFENSE CONDUCT THAT WAS THE RESULT OF THE MOST

2    RECENT ARREST.

3         SO I THINK THAT MR. YORK CAN SPEAK TO THAT AS WELL, BUT WE

4    DID NOT WANT THAT TO BE TAKEN IN THE CONTEXT THAT HE WAS

5    BLAMING MS. YORK FOR ANY OF THIS CONDUCT BUT THAT HE WAS

6    SITTING IN JAIL AT THE MOMENT BECAUSE OF A WOMAN THAT HE SHOULD

7    NOT HAVE HAD ANY CONTACT WITH.

8              THE COURT:  ALL RIGHT.  THANK YOU.

9              MR. ARCHER:  AND I UNDERSTAND THE COURT'S CONCERNS

10   ABOUT MR. YORK'S CRIMINAL HISTORY POINTS, BUT THE ACTUAL

11   OFFENSE CONDUCT AND WHEN I REFER TO THAT AS A PRANK CALL, I

12   DON'T MEAN THAT IT SHOULD BE COMPLETELY DISMISSED BY THE COURT.

13   IT'S NOT AN APPROPRIATE THING TO DO.  IT WAS NOT IN GOOD TASTE

14   AND ESPECIALLY IN THE CONTEXT OF A LARGER CUSTODY DISPUTE IT'S,

15   FRANKLY, AN OBNOXIOUS THING TO DO TO SOMEBODY ELSE.

16        BUT IT WAS A SINGLE VOICEMAIL LEFT.  THERE WAS NO

17   FOLLOWUP.  THERE WAS NO FRAUDULENT ATTEMPT.  THE COURT IS WELL

18   AWARE OF IT, AND IT WAS DONE WITH SORT OF A RIDICULOUS VOICE

19   CHANGER.

20             THE COURT:  YOU KNOW, I DID NOT HEAR OF A SPOOF OR

21   CARD OR WHATEVER IT WAS CALLED, I DIDN'T KNOW ABOUT THAT.  AND

22   MAYBE IT'S NOT TERRIBLY -- I LOOKED AT IT AND I THOUGHT, WELL,

23   THIS EXPRESSES A SOPHISTICATION THAT SOMEONE WOULD CONTACT A

24   PLACE LIKE THIS AND CHANGE THE VOICE AND GIVE THEM A CREDIT

25   CARD WHICH SUGGESTS THAT, YOU KNOW, I'LL DO IT AGAIN BECAUSE I

SER0014

1      WANT TO OPEN AN ACCOUNT HERE SO THAT I CAN CONTINUE TO MAKE

2      THESE TYPES OF CALLS.

3           THERE'S NO SUGGESTION THAT THAT'S WHAT HE WAS GOING TO DO,

4      AND I JUST WANT TO SAY THAT.  I'M NOT SUGGESTING THAT IN ANY

5      WAY THAT HE DID THAT.  I'M JUST GUESSING THAT IT WAS AN

6      EDUCATION FOR THE COURT TO FIND OUT THAT THERE ARE THESE

7      COMPANIES AND I SUPPOSE IT EXPRESSES A CERTAIN LEVEL OF

8      SOPHISTICATION TO PURSUE THAT AS OPPOSED TO THE AGE OLD METHOD

9      OF PUTTING A TOWEL OVER THE PHONE AND CRACKING YOUR VOICE IN

10     SOME MANNER LIKE HIGH SCHOOL KIDS DID WHEN THEY CALLED NANCY TO

11     SEE IF NANCY LIKES BILL WHEN IT'S REALLY BILL CALLING.  THAT

12     SOMETIMES HAPPENED IN A JUVENILE MANNER.

13          MR. ARCHER:  I DON'T THINK THAT -- AND WITH THE

14     POSSIBLE PENDENCY OF AN APPEAL, I DON'T WANT MR. YORK TO

15     COMMENT, BUT I DON'T THINK IT WAS NECESSARILY HIS IDEA THAT THE

16     TECHNICAL MEANS THAT HE'S NOT, I'M SORRY, HE'S NOT THE MOST

17     TECHNICALLY SAVVY GUY.  I DON'T THINK THAT YOU HAVE TO -- I

18     THINK YOU HAVE TO USE YOUR CREDIT CARD TO PURCHASE.

19          THE COURT:  THAT'S RIGHT, YOU USE THE CREDIT CARD

20     AND OPEN THE ACCOUNT AND WE'RE GOING TO FOOL SOMEBODY AND

21     THEY'RE GOING TO FIND OUT WHO I AM.  IT'S A CERTAIN LEVEL OF

22     SOPHISTICATION, I SHOULD SAY, OR CONSCIOUSNESS OF GUILT OF

23     USING SOMEONE'S VOICE AS OPPOSED TO YOUR OWN.

24          MR. ARCHER:  UNDERSTOOD.  BUT I THINK THAT THIS CALL

25     JUST DOESN'T, TO ME, STRIKE AT THE HEART OF WHAT SECTION 912 IS

SER0015

```
 1    DESIGNED TO PUNISH, TO PREVENT PEOPLE FROM BEING DEFRAUDED

 2    UNDER COLOR OF THE UNITED STATES AND THEN EITHER SECONDARILY OR

 3    A SEPARATE GROUNDS WITH EQUAL INTEREST OF THE GOVERNMENT IS

 4    THAT WE DON'T WANT TO UNDERMINE PEOPLE'S TRUST IN THE

 5    REPRESENTATIONS THAT SOMEONE IS A GOVERNMENT REPRESENTATIVE SO,

 6    FOR INSTANCE, FAKING A SEAL.

 7         SO WHEN SOMEONE RECEIVES A LETTER FROM THE I.R.S. THAT HAS

 8    AN I.R.S. SEAL ON IT, AND THEY SHOULD BE ABLE TO TRUST THAT IT

 9    ACTUALLY CAME FROM THE I.R.S., AND IF NOT, THEY SHOULD BE

10    PUNISHED AS SUCH.

11         MY POINT IN THE SENTENCING MEMO WAS THAT THIS WAS

12    SOMETHING THAT WAS APPARENT ON THE FACE THAT THIS WAS NOT

13    LEGITIMATE CONTACT FROM THE I.R.S. AND WHILE IT WAS OBNOXIOUS,

14    IT IS NOT WHAT IS AT THE CORE OF WHAT 912 PUNISHES.

15              THE COURT:  I THINK WE DISCUSSED CASES THAT TALKED

16    ABOUT THE DIFFERENCE OF CONDUCT USING A SEAL AND MAKING A

17    REPRESENTATION AND --

18              MR. ARCHER:  IT ALL FALLS UNDER THE SAME OFFENSE

19    LEVEL, AND THAT'S MY POINT IS THAT IT'S NOT TO BE DISMISSIVE OF

20    THE OFFENSE CONDUCT.

21         MR. YORK IS HERE TO OFFER NOTHING BUT AN APOLOGY FOR THIS

22    COURSE OF CONDUCT OVER THAT PERIOD OF TIME BUT RELATIVE THE

23    GUIDELINE OFFENSE LEVEL 6 DOES NOT VARY WHETHER IT'S THE SEAL,

24    OR ET CETERA, TO MY KNOWLEDGE.

25              THE COURT:  ALL RIGHT.  THANK YOU.
```

SER0016

1    SIR, DO YOU WISH TO MAKE A STATEMENT, OR IS THERE ANYTHING

2    YOU WOULD LIKE ME TO KNOW BEFORE I IMPOSE A JUDGMENT?

3    THE DEFENDANT:  I'M A LITTLE BIT NERVOUS.  I'D SAY

4    2008 TO 2012 WERE SOME OF THE WORST YEARS, WORST EMOTIONAL

5    THINGS I HAVE EVER GONE THROUGH DEALING WITH THE KIDS' CUSTODY,

6    THE DIVORCE, AND I HANDLED IT BADLY, YOU KNOW.

7    I WISH I COULD GO BACK AND CHANGE THINGS, BUT I JUST

8    CAN'T.  SO IT IS WHAT IT IS.  THANK YOU.

9    THE COURT:  THANK YOU.  ANYTHING FURTHER?

10   PROBATION OFFICER:  NO, YOUR HONOR.

11   MR. SCHENK:  NO.

12   MR. ARCHER:  NO, YOUR HONOR.

13   THE COURT:  ALL RIGHT.  THANK YOU.  I DO THINK

14   THAT -- AND THANK YOU, COUNSEL, AND I APPRECIATE YOUR COMMENTS.

15   ONE THING, MR. POLLAK, I THINK AS A CONDITION OF PROBATION

16   I ALSO THINK THAT THERE SHOULD BE, AND MAYBE IT'S IN HERE AND I

17   DIDN'T READ IT, BUT I THINK THERE SHOULD ALSO BE SOME MENTAL

18   HEALTH COUNSELLING, A COMPONENT THAT WE SHOULD ADD TO ALLOW

19   MR. YORK TO PARTICIPATE IN SOME COUNSELLING.

20   MR. ARCHER:  ABSOLUTELY NO OBJECTION, YOUR HONOR.

21   THE COURT:  MR. YORK BY HIS OWN COMMENT THIS

22   AFTERNOON TOLD US ABOUT THAT TROUBLING FOUR-YEAR PERIOD OF TIME

23   WITH CUSTODY AND HE STILL HAD SOME ISSUES OF CUSTODY WITH HIS

24   DAUGHTERS THAT I'M CERTAIN ARE GOING TO PROBABLY BE ADDRESSED.

25   IT SOUNDS LIKE HE WILL GO TO COURT TO TRY TO GET LEAVE OF COURT

SER0017

 1    TO ENGAGE IN SOME TYPE OF SUPERVISED VISITATION OR SOMETHING.

 2        AND I THINK SOME MENTAL HEALTH COMPONENT OR COUNSELLING

 3    COMPONENT WOULD BE HELPFUL TO AND FOR HIM.

 4        MR. ARCHER:  WE WOULD WELCOME THAT, YOUR HONOR.

 5    THANK YOU.

 6        THE COURT:  OKAY.  IN THIS MATTER THE COURT WILL --

 7    I HAVE HEARD THE COMMENTS, AND I THINK WE ALL LOOK AT THIS AND

 8    WE THINK, OH, YEAH, I DIDN'T MEAN TO MAKE LIGHT OF IT WHEN I

 9    SAY, YOU KNOW, IT'S BILL CALLING NANCY TO SEE -- PRETENDING TO

10    BE SOMEBODY ELSE TO SEE IF NANCY REALLY LIKES BILL.  THOSE

11    KINDS OF CALLS ARE JUVENILE AND THAT TYPE OF THING.

12        THIS WAS MORE SERIOUS, OF COURSE.  IT CAUSED AND IMPACTED

13    INDIVIDUALS IN A MORE SERIOUS WAY THAN THAT TYPE OF CALL AND I

14    THINK THAT YOUR CLIENT, MR. YORK, UNDERSTANDS THAT NOW.

15        I'M SURE HE WAS QUITE SURPRISED WHEN HE WAS CONTACTED BY

16    THE FEDERAL GOVERNMENT TO ENGAGE IN A PROSECUTION AGAINST HIM

17    AND HE WAS GOING TO GO TO THE FEDERAL COURT AND BE PROSECUTED

18    IN THAT MANNER.

19        BUT IT IS A SERIOUS THING WHEN ONE REPRESENTS A GOVERNMENT

20    OFFICIAL IN SOME CAPACITY.  THE JURY FOUND THAT.  THE JURY

21    HEARD THE EVIDENCE.  THEY HEARD FROM THE VICTIM.  HE KEPT

22    RECORDS AND SHARED THOSE, SOME OF THOSE WITH THE JURY, AND THE

23    JURY FOUND IT SUFFICIENT TO MAKE THE FINDING THAT THEY DID.

24        SO I DON'T WANT MR. YORK TO LEAVE HERE THINKING, OH, YEAH,

25    IT WAS JUST A CRANK CALL AND, GEE, WHAT IS THIS ALL ABOUT?  I

SER0018

```
 1    KNOW HIS MOTHER DIDN'T SUGGEST THAT IN HER COMMENTS ALSO.

 2         YOU KNOW, A MOTHER'S WORK IS NEVER DONE, AS THEY SAY.

 3         AND, MR. YORK, YOUR MOTHER HAS STOOD BY YOU FOR ALL OF

 4    THESE YEARS AND SHE'S GOING TO STAND BY YOU, AND I THINK IN

 5    YOUR TENDER YEARS OF 46, AND IT'S PROBABLY TIME, AND IF YOU'LL

 6    PARDON MY PRESUMPTION, I THINK IT'S TIME THAT YOU DID GROW UP A

 7    LITTLE BIT --

 8              THE DEFENDANT:  I AGREE.

 9              THE COURT:  -- AND GET SOME EMOTIONAL STRENGTH,

10    STRENGTH THAT YOUR SON, WHO IS PRESENT HERE TODAY, I THINK,

11    WILL GAIN FOR HIMSELF AND FROM YOUR CONDUCT.

12         I KNOW YOU WANT YOUR SON -- AND I UNDERSTAND HE'S IN

13    COLLEGE AND HE'S ALSO WORKING.

14              THE DEFENDANT:  UH-HUH.

15              THE COURT:  I KNOW YOU WILL CONTINUE TO BE PROUD OF

16    HIM AS YOUR MOTHER IS PROUD OF YOU.

17         AND YOU ARE, FROM EVERYTHING I READ IN THE PROBATION

18    REPORT SUGGESTS THAT YOU'RE A SMART INDIVIDUAL.  YOU HAVE

19    CREATIVE IDEAS.  YOU'VE DONE BUSINESSES AND YOU KNOW HOW TO RUN

20    A SMALL BUSINESS AND MAYBE YOU'LL DO THAT AGAIN, BUT I'M GOING

21    TO TELL YOU THIS, AND I MEAN NO DISRESPECT TO YOU, BUT I'M

22    CERTAIN PART OF THE STRESS AND PERHAPS DISAPPOINTMENT IN

23    YOURSELF THAT YOU FEEL IS THAT HERE YOU ARE STANDING IN FEDERAL

24    COURT IN FRONT OF A FEDERAL JUDGE WITH A LAWYER AT YOUR RIGHT

25    SIDE AND YOUR SON IS WITNESSING YOU BEING SENTENCED.
```

SER0019

1    AND I'M SURE YOU HAVE -- AND I'M SURE YOU'RE NOT PROUD OF

2    THAT, AND I HOPE THIS PROVIDES YOU SOME TALKING POINTS GOING

3    FORWARD WITH YOUR SON.

4        I THINK, AND MY SENSE IS THAT WHEN I READ NOT TOO FAR

5    BETWEEN THE LINES HERE IS THAT THERE ARE REDEEMING, MANY

6    REDEEMING FACTORS IN YOUR PERSONAL LIFE THAT YOUR SON WILL AND

7    SHOULD BE PROUD OF.

8        AND I THINK IT'S YOUR TASK ON GOING TO SHOW HIM --

9            THE DEFENDANT:  AGREED.

10            THE COURT:  -- TO SHOW HIM WHAT YOU CAN DO IN A

11    POSITIVE WAY.  NOT A FLIP WAY.

12            THE DEFENDANT:  RIGHT.

13            THE COURT:  BUT A MEANINGFUL, SINCERE, SINCERE WAY,

14    SERIOUS WAY.

15        AND I HOPE YOU TAKE SOME OPPORTUNITY DURING THIS PERIOD OF

16    SUPERVISED RELEASE WITH PROBATION THAT I'M GOING TO IMPOSE TO

17    DO JUST THAT.

18        I AM GOING TO IMPOSE A PRISON SENTENCE OF 12 MONTHS AND

19    1 DAY, AND I DO THINK THAT'S THE APPROPRIATE SENTENCE IN THIS

20    MATTER.  AND I THINK THAT THE REHABILITATIVE NATURE SOMETIMES

21    WITH THE SENTENCING PROCESS IS THE SENTENCING HEARING ITSELF

22    AND BY THAT I POINT OUT THE FACT THAT MR. YORK'S FAMILY IS

23    HERE.  HIS MOTHER IS HERE, AND HIS SON IS HERE.

24        THAT IS SIGNIFICANT TO SEE A SON AND A PARENT WITNESS THE

25    SENTENCING BY A PARENT, AND I THINK THAT'S SIGNIFICANT AND THAT

SER0020

1    IN AND OF ITSELF HAS SOME REHABILITATING ASPECT TO IT.

2         AND I HOPE, I HOPE YOU TAKE THAT SINCERELY.  YOU SHOULD

3    KNOW THAT THE COURT COULD OR THE COURT COULD IMPOSE WHAT IT

4    WANTS IN THE MATTER.

5              MR. ARCHER:  YEAH.

6              THE COURT:  AND I DON'T TAKE IT LIGHTLY.  I AGREE

7    WITH THE JURY'S VERDICT.  I THINK THEY HEARD THE CASE, AND I

8    THINK YOU GOT A FAIR TRIAL, AND THEY RENDERED, THE COMMUNITY

9    RENDERED THE VERDICT THAT THE COMMUNITY FELT WAS APPROPRIATE IN

10   THIS CASE.

11        I DO FIND THAT A YEAR AND A DAY, 12 MONTHS AND 1 DAY, IS

12   THE APPROPRIATE SENTENCE.

13        I'LL ADOPT THE RECOMMENDATIONS, MR. POLLAK, INCLUDING THE

14   RECOMMENDATION OF MENTAL HEALTH COUNSELLING UNDER THE

15   SUPERVISION OF PROBATION, AND THE PROBATION OFFICER CAN

16   DETERMINE THE NATURE AND THE SCOPE AND LENGTH OF THAT.

17        BUT I DO, MR. YORK, WANT YOU TO, AS A CONDITION OF

18   PROBATION, TO ALSO ENGAGE IN SOME COUNSELLING AS WELL.

19        I'LL ALSO ORDER A SPECIAL ASSESSMENT OF $100 IN THIS

20   MATTER.

21        AS TO THE SURRENDER DATE --

22              MR. ARCHER:  YES, YOUR HONOR.  I THINK HE'LL BE

23   DESIGNATED WITHIN A MONTH'S TIME SO THE SUGGESTION WAS GOING TO

24   BE IF HE COULD SURRENDER BY WEDNESDAY, FEBRUARY THE 3RD?

25              THE COURT:  IS THAT ENOUGH TIME?

SER0021

```
 1              MR. ARCHER:  I UNDERSTAND IN TALKING WITH
 2    MR. CARRANZA, OFFICER CARRANZA, THEY HAVE BEEN -- AND I'VE
 3    SPOKEN WITH THE GOVERNMENT AND IF HE'S NOT DESIGNATED BY THAT
 4    TIME, I WOULD ASK THAT PERHAPS IF THE COURT WOULD CONSIDER A
 5    STIPULATED REQUEST TO POSTPONE THAT BY MAYBE 15 OR 20 DAYS.
 6        MR. YORK ON THE ONE HAND DOES NOT WANT TO HAVE TO SIT IN
 7    THE COUNTY JAIL PRIOR TO GOING TO A FACILITY.  ON THE OTHER
 8    HAND, HE'S ON FAIRLY RESTRICTIVE TERMS OF RELEASE RIGHT NOW.
 9              THE COURT:  OKAY.
10              MR. ARCHER:  SO IF WE COULD START WITH A MONTH AND
11    MAYBE BEG THE COURT FOR AN EXTENSION.
12              THE COURT:  OKAY.  SO FEBRUARY 3RD, FEBRUARY 3RD BY
13    2:00 P.M.
14        SO A ONE-YEAR TERM OF SUPERVISED RELEASE WITH THE
15    CONDITIONS INDICATED.  THERE'S NO FINE.  THE COURT FINDS THAT
16    MR. YORK DOES NOT HAVE THE FINANCIAL ABILITY TO PAY A FINE.  A
17    $100 SPECIAL ASSESSMENT.
18        SIR, YOU HAVE THE RIGHT TO FILE AN APPEAL IN THIS MATTER.
19    ANY APPEAL MUST BE FILED WITHIN 14 DAYS OF TODAY'S DATE.
20        DO YOU UNDERSTAND THAT, SIR?
21              THE DEFENDANT:  YEAH.
22              THE COURT:  OKAY.  ANYTHING FURTHER?
23              THE DEFENDANT:  I DO.
24              MR. ARCHER:  NO, YOUR HONOR.  THANK YOU.
25              MR. SCHENK:  THANK YOU.
```

SER0022



1          PROBATION OFFICER:  THANK YOU.

2          THE COURT:  OKAY.

3      (COURT CONCLUDED AT 4:00 P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SER0023

1

2

3                          <u>CERTIFICATE OF REPORTER</u>

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16          IRENE RODRIGUEZ, CSR, RMR, CRR
            CERTIFICATE NUMBER 8074
17

18          DATED:  FEBRUARY 12, 2016

19

20

21

22

23

24

25

SER0024

1   BRIAN J. STRETCH (CABN 163973)
    United States Attorney

2

3   DAVID R. CALLAWAY (CABN 121782)
    Chief, Criminal Division

4   BRIANNA PENNA (CABN 290444)
    Special Assistant United States Attorney

5   JEFF SCHENK (CABN 234355)
    Assistant United States Attorney

6
            150 Almaden Boulevard, Suite 900
7           San Jose, California 95113
            Telephone: (408) 535-5061
8           FAX: (408) 535-5066
            Brianna.penna@usdoj.gov

9

10  Attorneys for United States of America

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14

15  UNITED STATES OF AMERICA,            )   NO. CR-15-00226-EJD
                                         )
16          Plaintiff,                   )   UNITED STATES' SENTENCING
                                         )   MEMORANDUM
17      v.                               )
                                         )   Sentencing Date:  January 4, 2015
18  DOUGLAS STROMS YORK,                 )
                                         )   **Honorable Edward J. Davila**
19          Defendant.                   )
    _____ )

20

21

22          The United States hereby submits its sentencing memorandum in the above-referenced case.  On

23  August 28, 2015 the defendant was found guilty by a jury of Count One of the Superseding Indictment,

24  which charged the defendant with falsely impersonating a federal officer or employee, in violation of 18

25  U.S.C. § 912.  The Government agrees with the Guidelines calculation in the Presentence Investigation

26  Report ("PSR") prepared by the United States Probation Office.  The Government respectfully

27  recommends a low-end guideline sentence of one-year imprisonment and one year of supervised release.

28  While we generally agree with the recommendation of the Probation office, we would recommend a

UNITED STATES' SENTENCING MEMORANDUM
CR-15-00226-EJD
                                        1

**SER0025**

sentence of one year rather than one year and one day for the reasons stated below.

## I.      Background Facts and Procedure

After the defendant's wife initiated divorce proceedings against him, the defendant began to harass his wife and her boyfriend, Allan Hessenflow.  As part of this harassment, on February 23, 2012, the defendant utilized a telephone "spoofing service" to harass Mr. Hessenflow.  A telephone spoofing service is a service that allows a caller to conceal his voice during a telephone call, and also to change the telephone number that appears on a caller identification.  On February 23, 2012, the defendant called Mr. Hessenflow using a spoofing service, and impersonated an employee from the Internal Revenue Service who was investigating Mr. Hessenflow's tax records.

Throughout the course of the investigation of the suspicious voice mail, it was revealed that the defendant was engaged in a pattern of severe harassment of the victims.  Multiple instances of documented harassment were revealed, all carried out by the defendant and aimed at the victims.  This includes repeatedly calling them, showing up at their house late at night, and sending customers to the house to purchase items not actually for sale.  The defendant has a lengthy and serious criminal history that spans twenty-seven years.  He has sustained several convictions for domestic violence offenses. Defendant was subject to a restraining order to keep him away from the victims, further demonstrating his pattern of animus against them.

On June 19, 2015, the defendant was released by the Court on a $50,000 unsecured bond with numerous conditions, including supervision by Pretrial Services and location monitoring.  During the three month period that the defendant was on supervision with Pretrial Services, he incurred six violations and appeared before the Magistrate Court three times for bail violation hearings.  He showed a complete lack of respect for the conditions of his release and demonstrated an inability to follow court-ordered instructions.

## II.     Guidelines Calculations

The Government concurs with the Probation Officer's calculation of the sentencing guidelines. Offenses under 18 U.S.C. § 912 offenses should be sentenced under USSG §2J1.4.  That section provides that an offense involving the impersonation of an employee of the United States has a base

UNITED STATES' SENTENCING MEMORANDUM
CR-15-00226-EJD

2

SER0026

offense level of 6.  No specific offense characteristics were present, and because the defendant did not accept responsibility for the offense, the adjusted offense level remains at a level 6.   After a detailed review of the defendant's lengthy criminal history, Probation determined that the defendant falls within criminal history category VI.  His past convictions resulted in a subtotal criminal history score of 19.  Two points were added due to the defendant's committing the offense while on criminal probation. *See* PSR at 24.  The Government agrees with Probation's position regarding the defendant's objection to the criminal history calculations.  *See* PSR Addendum Defense Objection Number One.  A total adjusted offense level of 6 and a criminal history category of VI yield a guideline range of 12 to 18 months.

### III.    Government's Position Regarding Sentencing

Probation has recommended that the defendant should be sentenced to imprisonment for one year and one day, plus one year of supervised release.  The government respectfully recommends a sentence of one year, followed by one year of supervised release.  Pursuant to Title 18, United States Code Section 3553(a), the Court must impose a sentence sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide defendant with correctional treatment.  Applying the principles cited above, the government recommends that the Court impose a sentence of twelve months imprisonment, to be followed by one year of supervised release.

First, the nature and circumstances of the offense of this case demonstrate that the defendant's conduct that gave rise to the charges were part of an escalating pattern of harassment aimed at the victims.  This was not an instance of a good-natured prank phone call.  The defendant took active steps to disguise his voice and increase the believability of his scheme to impersonate an Internal Revenue Service agent.  This voice message was intended to continue his ongoing pattern of harassment aimed at the victims.

Second, defendant's history and characteristics support a within-guidelines sentence.  Defendant's lengthy criminal history, as detailed in the PSR, shows an unbroken pattern of criminal behavior starting in 1989 and continuing to the present.  He has been convicted of numerous offenses, including DUI offenses, domestic violence offenses, burglary, drug possession convictions, violations of

UNITED STATES' SENTENCING MEMORANDUM
CR-15-00226-EJD

SER0027

a protective order, fighting in public, and evading police officers, among others. It is clear that defendant's past sentences have had little, if any, deterrent impact on his tendency to re-offend. Imposing a twelve month sentence will ensure that the public is protected from the defendant's ongoing criminal conduct during that time.

The defendant has been afforded numerous opportunities to demonstrate his ability to comply with the law and court-orders. Defendant's continued violations of his release conditions while awaiting trial in this case demonstrate his complete lack of deference to court orders. The defendant has shown a complete lack of good faith in complying with his release conditions or acting within the law.

While our recommendation is similar to Probation, there is a notable difference. If defendant were sentenced to one year and one day, he would be eligible to receive good time credits and thus serve less than a full year of incarceration. If he is sentenced to twelve months imprisonment, he would be required to serve the entire time imposed. We view Probation's one year and one day prison recommendation as a benefit that the defendant has not earned. Ensuring that the defendant serves the entire twelve months in custody is appropriate based on the specific facts of this case. Such a sentence is sufficient, but not greater than necessary to achieve both Guidelines and statutory sentencing goals.

## IV. Conclusion

For all of the foregoing reasons, the government respectfully recommends that this Court sentence the defendant to twelve months imprisonment, followed by a twelve month term of supervised release. Such a sentence would be sufficient but not greater than necessary to address those factors.

DATED: December 29, 2015                    Respectfully submitted,

                                            BRIAN J. STRETCH
                                            Acting United States Attorney

                                            /s/
                                            BRIANNA PENNA
                                            JEFF SCHENK
                                            Assistant United States Attorneys

SER0028

STEVEN G. KALAR
Federal Public Defender
GRAHAM E. ARCHER
Assistant Federal Public Defender
55 South Market Street, Suite 820
San Jose, CA 95113
Telephone: (408) 291-7753

Counsel for Defendant YORK

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-15-00226 EJD |
| Plaintiff, | ) ) | DEFENDANT'S SENTENCING MEMORANDUM |
| vs. | ) ) | Date: January 4, 2016 |
| DOUGLAS STORMS YORK, | ) ) | Time: 1:30 p.m. Judge: Hon. Edward J. Davila |
| Defendant. | ) ) ) | |

**INTRODUCTION**

Mr. York appears before this Court for sentencing after trial on a single count of False Personation of an Employee of the United States (18 U.S.C. § 912) for a prank phone call made on February 24, 2012. This phone call was made to his wife's new boyfriend during a contentious divorce and child custody dispute, at the apex of a personal and professional meltdown that would eventually lead Mr. York to spend time in state prison. The phone call was in poor taste and reflected a lack of judgment, but it sought no fraudulent gain, serving only to annoy Mr. Hessenflow, who jumped at the opportunity to report his girlfriend's antagonistic husband to federal authorities.

SER0029

1       While Mr. York's criminal history is significant (though most of the convictions minor),

2 the fact remains that this prosecution is for a single voicemail that was immediately recognized

3 by the recipient as a fake and a prank. For that, Mr. York should not be sentenced to any more

4 custody time than the significant amount he has already served.

5

6                              **BACKGROUND**

7       There is little dispute as to the facts of the case, and the Court is well familiar with them

8 having presided over the trial.

9       The voicemail was left on February 24, 2012, Mr. Hessenflow reported the call to the IRS

10 on February 25, 2012, and the case was referred to the US Attorney's office for prosecution on

11 December 4, 2012. For some reason, the Government waited two and a half years before seeking

12 an indictment, doing so on April 22, 2015. In the interim, Mr. York was sentenced to state prison

13 for contemporaneous conduct and released. Mr. York was brought into federal custody on May

14 12, 2015, and remained in custody until his release on bond June 19, 2015. Seven days before the

15 pretrial conference, the Government superseded to add a count of Telecommunications Device

16 Harassment (47 U.S.C. § 223(a)(1)(C), which was dismissed mid-trial.

17       At trial the Government introduced no evidence that Mr. York intended to defraud Mr.

18 Hessenflow, and instead argued that Mr. York was guilty because he had impersonated an IRS

19 agent, and acted as one by leaving the prank voicemail. Mr. York was convicted of the one

20 remaining count.

21       During his time in prison and the time since his release, Mr. York has not attempted

22 contact with his wife or Mr. Hessenflow. To the contrary, while he is hopeful that he will be able

23 to re-establish a relationship with his children in the future, he has been respectful of the court

24 orders in place.

25

26

Defendant's Sentencing Memo
No. CR 15-00226 EJD                2

**SER0030**

**ARGUMENT**

**I.     The § 3553(a) Factors Call for a Below Guideline Sentence**

The Supreme Court and the Ninth Circuit have made it clear that the Guidelines are neither mandatory nor presumptively reasonable. *See, e.g., United States v. Booker*, 543 U.S. 220 (2005); *Nelson v. United States*, 555 U.S. 350 (2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). To arrive at an appropriate sentence, a court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need for just punishment and deterrence. 18 U.S.C. § 3553(a). Here, because the offense conduct is exceedingly mitigating when compared to the range of conduct proscribed under the statute, the staleness of the offense conduct, and the Mr. York's life circumstances at the time of the offense, a sentence below the guideline range is appropriate.

**A.     The Nature and Circumstances of the Offense**

The charged offense conduct involves a single voicemail in a ridiculous altered voice left for the new boyfriend of Mr. York's wife during a custody dispute. The recipient immediately recognized it as fake, and the phone number left with the voicemail was non-functional. The conduct is, at best, at the outer edge of what is criminalized by the statute.

On its face, Section 912 criminalizes the impersonation of federal employees, an important goal. For example, leveraging a false FBI credential to coerce someone into doing something, or an Air Marshal credential to bypass airport security are examples of conduct that causes real harm, and should be punished severely under this statute. Additionally, phone calls by impostors claiming to be IRS agents and demanding money for fictional unpaid taxes should be punished under this statute. Those actions not only serve to further a fraudulent goal, but undermine faith in government.

SER0031

The United States Supreme Court in *United States v. Lepowitch* 63 S. Ct. 914 (1943) noted that the purpose of Section 912 was, in part, "to maintain the general good repute and dignity of the (government) service itself. Id. at 916 (internal quotations omitted).

Here, there is no evidence that Mr. York was trying to defraud Mr. Hessenflow out of anything, and all evidence points to Mr. York simply attempting to annoy him. Had Mr. York actually been seeking to begin a dialogue under a ridiculous assumed voice and identity in order to gain something, he would have left a real number for Mr. Hessenflow to call, or would have called back the next day. None of that occurred. The caller ID was a fake, and there was no follow-up to the single voicemail left.

The punishment meted out should reflect the degree to which the conduct caused the type of harm proscribed by the statute. There was no fraud – no money was sought, and there was no actual attempt to get Mr. Hessenflow to turn over personal documents. All that is left is potential harm done by undermining the trust in government operations.

Here, there was no harm to that trust or reputation. No official seal was forged, no fake badge was displayed. Instead, Mr. Hessenflow received a voicemail in an obviously altered voice, the content and professionalism of which wouldn't pass muster at a fast food drive-through window, let alone the IRS. Mr. Hessenflow immediately suspected Mr. York.

Mr. York proceeded to trial on this case because Mr. Hessenflow was the recipient of a poorly conceived prank, not a genuine attempt to impersonate an IRS employee, and the sentence imposed should reflect as such.

### E. Personal Characteristics of Mr. York

Mr. York has supported himself since he left home during high school. He and his wife, Andrea York, ran a successful construction business building outdoor BBQ islands until the real estate collapse in 2008. That collapse and the subsequent financial ruin caused great friction between Mr. York and his wife.

That friction, professional failure, and his sudden inability to provide for his children

SER0032

1    contributed to Mr. York's substance abuse and personal crisis from 2009 to 2012. Ms. York

2    traveled down the same unfortunate path, losing custody of her children due to substance abuse

3    and domestic violence committed against Mr. York. Mr. York held sole custody of their children

4    from 2008 through 2012. As is apparent from the summaries of the police reports during that

5    time, Mr. York was troubled and struggling with methamphetamine addiction. His flight from the

6    area while on probation eventually led to a prison sentence.

7          Mr. York is now in the process of putting his life back together. While he was successful

8    in his entrepreneurship earlier in life, he is now seeking a union carpentry position. Mr. York is

9    hopeful that the steady work will keep his life stable.

10          Mr. York has the support of his family. His mother and son attended his trial, and have

11    often been present with him at other court appearances. As noted by his mother in the

12    presentence report "the best thing for the defendant is for him to work and stay busy."

13          While a court order currently prevents him from contacting Ms. York or his daughters, he

14    is hopeful that he will be able to contribute to their lives in the future. Mr. York wishes Ms. York

15    and Mr. Hessenflow no ill will, and is interested in putting 2012 and the few years prior far in the

16    rearview mirror.

17          Mr. York relapsed under the stress of the pending case, but has been attending NA

18    meetings for the portions of the case he has been out of custody. When Mr. York was in custody,

19    he was awarded the position of "trustee" at the jail, and worked in the administrative office six to

20    eight hours a day. He is committed to rebuilding his life and staying sober.

21          **F.     Deterrence and Re-Offense**

22          The circumstances under which the offense conduct occurred no longer exist. The highly

23    contentious child custody dispute is no longer in dispute. Mr. York has not attempted contact

24    with Mr. Hessenflow or Ms. York for over three years. As discussed above, the offense conduct

25    here falls barely within the harm proscribed by statute, with no fraud occurring, and no danger

26    that the recipient lose faith in the sanctity of government authority. The sentence should reflect as

SER0033

1   such.

2        The timing of the Government's filing should be factored into this Court's decision, as

3   well. Through their unexplained delay, the Government cost Mr. York the possibility of a

4   concurrent sentence, but also gave him a three year opportunity to demonstrate to this Court that

5   he is no threat to Ms. York or Mr. Hessenflow.

6        As the Court noted during pretrial argument, this was not a trial held for the purpose of

7   rehashing bad behavior by both sides during a family court proceeding. The sentencing,

8   especially three years later, should not be a venue for that either.

9        During the duration of this case, over 8 months as of this filing, Mr. York has either been

10   in custody, in a halfway house, or on extremely strict home detention. He has been permitted to

11   leave only for NA meetings, court appearances, and to seek employment or medical treatment.

12   Mr. York has been punished enough for a single voicemail he left in 2012.

13                      **<u>CONCLUSION</u>**

14        For the foregoing reasons, Mr. Young asks that the Court impose a sentence of credit for

15   time served, a supervised release term of 1 year, and no fine. If the Court imposes an additional

16   custodial sentence, Mr. York asks that he be placed as close as possible to San Jose to permit his

17   son and mother to visit.

18

19   Dated: December 28, 2015

20

21

22                     Respectfully submitted,

23                     STEVEN G. KALAR
                       Federal Public Defender

24

25                  _____/s/_____
                    GRAHAM ARCHER

26                     Assistant Federal Public Defender

**SER0034**

1 MELINDA HAAG (CABN 132612)
United States Attorney
2
DAVID R. CALLAWAY (CABN 121782)
3 Chief, Criminal Division
4 BRIANNA L. PENNA (CABN 290444)
JEFFREY SCHENK (CABN 234355)
5 Assistant United States Attorney
6     150 Almaden Boulevard, Suite 900
San Jose, California 95113
7     Telephone: (408) 535-5061
FAX: (408) 535-5066
8     Brianna.penna@usdoj.gov
9 Attorneys for United States of America

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                         SAN JOSE DIVISION

13

14 UNITED STATES OF AMERICA,          ) Case No. CR-15-00226-BLF
                                      )
15          Plaintiff,                ) PARTIES' JOINT PROPOSED JURY
                                      ) INSTRUCTIONS
16     v.                             )
                                      ) Trial Date:    July 20, 2015
17 DOUGLAS YORK,                      ) Time:          9:00 a.m.
                                      ) Courtroom:     Hon. Beth Labson Freeman
18          Defendant.                )
                                      )
19 ─────────────────────────────────

20         The United States, by and through Special Assistant United States Attorney Brianna Penna, and

21 the defendant Douglas Storms York, by and through Assistant Federal Public Defender Graham Archer

22 submit this joint set of proposed jury instructions.  There are five instructions in dispute.  Depending on

23 the evidence at trial, as well as government's superseding indictment, additional instructions may be

24 required and leave is respectfully requested to include additional instructions as may become

25 appropriate.

26

27

28

SER0035

**DISPUTED INSTRUCTION NO. 28**
**RE: FALSE IMPERSONATION OF FEDERAL OFFICER OR EMPLOYEE – ELEMENTS**
**DEFENSE OFFERED**

Mr. York is charged in Count One of the Indictment with fraud while impersonating a federal employee in violation of Title 18, section 912 of the United States Code.

In order for Mr. York to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

First, Mr. York falsely pretended to be an employee acting under the authority of the United States Internal Revenue Service;

Second, Mr. York acted in such a manner as an employee of the United States Internal Revenue Service; and

Third, Mr. York acted with the intent to defraud.

NINTH CIRCUIT MODEL JURY INSTRUCTION, 8.50 (2010) (MODIFIED); ** Mr. York requests the third element to preserve his right to appeal due to a Circuit split on the issue of intent to defraud. *See United States v. Tomsha-Miguel*, 766 F.3d 1041,1050 (9th Cir. 2014) (holding there is no requirement for government to establish intent to defraud under 18 U.S.C. sec. 912, but noting Circuit split on the issue).

SER0036

1  STEVEN G. KALAR
   Federal Public Defender
2  GRAHAM ARCHER
   Assistant Federal Public Defender
3  55 South Market Street, Suite 820
   San Jose, CA 95113
4  Telephone: (408) 291-7753
   Graham_Archer@fd.org
5
   Counsel for Defendant DOUGLAS STORMS YORK
6

7

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  UNITED STATES OF AMERICA,        )   No. CR 15-00226 BLF
                                     )
13              Plaintiff,           )   DEFENDANT'S OPPOSITION TO
                                     )   GOVERNMENT'S MOTION *IN LIMINE*
14  vs.                              )   NO. 1
                                     )
15  DOUGLAS STORMS YORK,             )   Pretrial Conference: July 16, 2015
                                     )   Time: 2:00 p.m.
16              Defendant.           )   Trial Date: July 20, 2015
                                     )
17  _____  )   **Honorable Beth Labson Freeman**

18
         The defense respectfully submits its opposition to government's Motion *in Limine* No. 1.
19
    **I.    The Government Has Failed to Provide Adequate Notice Under Rule 404(b)**
20
         Rule 404(b) requires the government to give "reasonable notice in advance of trial, or
21
    during trial if the court excuses pretrial notice on good cause shown, the general nature" of any
22
    other-acts evidence it intends to introduce at trial. United States v. Vega, 188 F.3d 1150, 1152-
23
    53 (9th Cir. 1999). See also Crim. L.R. 16-1(c)(3) (requiring government to provide "a summary
24
    of any evidence" it intends to offer under Rule 404(b), "supported by documentary evidence or
25
    witness statements in sufficient detail that the Court may rule on the admissibility of the
26

Def.'s Opp. to Govt. Mot. In Limine No. 1
CR 15-00226 BLF                              1

SER0037

proffered evidence."); see also United States v. Mayans, 17 F.3d 1174, 1183 (9th Cir. 1994). The Court may "decide that the particular request or notice was not reasonable, either because of lack of timeliness or completeness." Fed. R. Evid. 404(b) (advisory comm. notes to 1991 amendments). Failure to provide adequate notice renders the other acts evidence inadmissible, whether the evidence is used in the prosecution's case-in-chief, for impeachment, or in rebuttal. Vega, 188 F.3d at 1153-54.

The government's notice is both untimely and inadequate. The defense requested notice of any 404(b) evidence in its May 14, 2015 discovery letter. See Exhibit A. The government failed to provide any notice until its July 2, 2015 motion in limine. In addition, the government has not provided the defense with any court records concerning the alleged 2001 and 2012 prior convictions, or a RAP sheet. This evidence should be excluded based on untimely notice.

Even if the government's notice were timely, the evidence should still be excluded because the notice is inadequate. The government bears the burden of showing that the evidence "is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citations omitted); see also United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993) (quoting Mehrmanesh); United States v. Arambula-Ruiz, 987 F.2d 599, 602-03 (9th Cir. 1993) (same); United States v. Alfonso, 759 F.2d 728, 739 (9th Cir. 1985) (same).

Here, the government has provided only a generic assertion that the prior acts of harassment are admissible as evidence of Mr. York's intent, preparation, plan, knowledge, identity and absence of mistake or accident. See Govt. Mot. in Limine No. 1 ("GMIL 1") at 4. At least three of these – intent, knowledge, and absence of mistake or accident – are plainly irrelevant here. Neither intent nor knowledge is an element of the offense, and a claim of mistake or accident is not a defense. Even as to the other alleged bases, the government has failed to "articulate precisely the evidential hypothesis by which a fact of consequence may be

Def.'s Opp. to Govt. Mot. In Limine No. 1
CR 15-00226 BLF                                    2

SER0038

1    inferred from the other acts evidence." <u>Mayans</u>, 17 F.3d at 1181.  As a result, this Court cannot

2    "clearly, simply, and correctly instruct the jury as to the *specific* purpose for which they may

3    consider the evidence." <u>United States v. Curtin</u>, 489 F.3d 935, 958 (9th Cir. 2007).

4    **II.     The Government Has Not Met Its Burden Under Rule 404(b)**

5          "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a

6    person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  Exceptions to

7    this rule are disfavored; "the use of such evidence must be narrowly circumscribed and limited."

8    <u>United States v. Bailleux</u>, 685 F.2d 1105, 1109 (9th Cir. 1982).  This is particularly true in

9    criminal cases, because of "the underlying premise of our criminal system, that the defendant

10   must be tried for what he did, not for who he is." <u>Mayans</u>, 17 F.3d at 1181.

11         Prior bad acts evidence is inadmissible unless: "(1) the evidence tends to prove a material

12   point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding

13   that the defendant committed the other act; and (4) (in cases where knowledge and intent are at

14   issue) the act is similar to the offense charged."  <u>United States v. Vizcarra-Martinez</u>, 66 F.3d

15   1006, 1013 (9th Cir. 1995).  The government cannot satisfy these requirements.

16         First, the evidence does not tend to prove any material point.  To obtain a conviction

17   under § 912, the government must prove two elements: (1) that Mr. York falsely pretended to be

18   an IRS employee; and (2) that he acted as such. <u>See</u> 18 U.S.C. § 912.  Whether Mr. York

19   previously harassed the victims, violated a restraining order, or committed domestic violence has

20   no bearing on either element.  Second, the government has failed to meet its burden of

21   demonstrating that the prior acts are not too remote.  The government does not even identify

22   when most of the proffered acts occurred. <u>See</u> GMIL 1 at 1:27-2:5.  The alleged prior conviction

23   for inflicting corporal injury on a spouse was in 2001, more than a decade prior to the events

24   alleged here.  And while the government alleges that there was a conviction in 2012, the

25   government has failed to produce any documentation.  Finally, the government has failed to

26   provide this Court with any evidence to support a finding that Mr. York committed the prior acts.

Def.'s Opp. to Govt. Mot. In Limine No. 1
CR 15-00226 BLF                          3

1      Even if the government could meet these requirements, the evidence should be excluded

2   under Rule 403 because it is more prejudicial than probative.  The probative value of this

3   evidence is negligible because the government has non-404(b) evidence, including

4   cell phone records and credit card records, which may logically connect Mr. York to the phone

5   call.  At the same time, the evidence is profoundly prejudicial, for many of the same reasons that

6   the government seeks to exclude evidence of the victim's prior bad acts.  Allowing the

7   government to paint Mr. York as an abusive convicted criminal would be unfairly prejudicial.

8   **III.     The Prior Bad Acts Are Not Inextricably Intertwined with the Offense**

9      The government contends that evidence it seeks to offer is "inextricably intertwined"

10  with the charged offense.  It is not.  This is not a case like <u>United States v. Soliman</u>, 813 F.2d

11  277 (9th Cir. 1987), on which the government relies.  In <u>Soliman</u>, the offense conduct and the

12  prior bad acts were all part of the same mail fraud scheme, and were "committed in a single

13  criminal episode."  <u>See id.</u> at 278-79.  Here, by contrast, the government seeks to patch together

14  a variety of actions, occurring at different times, under a general label of "harassment."  There is

15  no suggestion that Mr. York engaged in the same conduct (impersonating a federal agent) on any

16  prior occasion.  Finally, there is no need to tell the jury a "comprehensive story" in this case.

17  The charge is straightforward and easy for a jury to understand without an elaborate backstory.

18  Accordingly, the Court should deny the government's motion to introduce prior acts of

19  harassment and prior convictions.

20  Dated:  July 9, 2015

21                                    Respectfully submitted,

22                                    STEVEN G. KALAR
                                      Federal Public Defender

23

24                                    ___/s/_____
                                      GRAHAM ARCHER
25                                    Assistant Federal Public Defender

26

Def.'s Opp. to Govt. Mot. In Limine No. 1
CR 15-00226 BLF                          4

**SER0040**

Published on *Model Jury Instructions* (http://www3.ce9.uscourts.gov/jury-instructions)

Home > Manual of Model Criminal Jury Instructions > 8. Offenses Under Title 18 > 8.50 False Impersonation of Federal Officer or Employee

# 8.50 False Impersonation of Federal Officer or Employee

### 8.50 FALSE IMPERSONATION OF FEDERAL OFFICER OR EMPLOYEE
### (18 U.S.C. § 912)

The defendant is charged in [Count _____ of] the indictment with fraud while impersonating a federal officer or employee in violation of Section 912 of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant falsely pretended to be an [officer] [employee] acting under the authority of [the United States] [*specify federal department, agency or officer*]; and

Second, the defendant [acted as such] [in such pretended character demanded or obtained [*specify thing of value*]].

### Comment

Two options are afforded for the second element because 18 U.S.C. § 912 states two offenses. It has been held to be duplicitous to charge both falsely acting as a federal officer and demanding or obtaining money while falsely acting as a federal officer in a single count. *United States v. Aguilar*, 756 F.2d 1418, 1422 (9th Cir.1985).

**File:**

8.50_criminal.wpd [1]

**Source URL:** http://www3.ce9.uscourts.gov/jury-instructions/node/508

**Links:**

[1] http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/8.50_criminal_0.wpd

## CERTIFICATE OF SERVICE

I, Hui Chen, certify that I am an employee of the Office of the United States Attorney, Northern District of California, a person over 18 years of age and not a party to the within action. I certify that on July 25, 2016, I electronically submitted the

- **Brief for the United States as Appellee**
- **Government's Supplemental Excerpts of Record (1 Volume)**

in the case of *United States v. Douglas York*, No. 16-10010, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 25, 2016

/s/ Hui Chen

Hui Chen, Paralegal